Carutiiers, J.,
delivered tbe opinion of tbe court.
At tbe February term, 1852, of tbe circuit court of Weakley county, Alfred and Anthony were indicted for tbe morder of their master, John Peck. The case was *582 continued by defendants, at February and June terms, and in October there was no court. They were tried and convicted at February term, 1853; motion for a new trial was made and overruled, and appeal in error to this court.
The errors relied upon for a reversal, are said to exist in the judgments of the court, as to the competency of jurymen, and the admissibility of evidence on the trial. The sufficiency of the evidence to sustain the verdict, if legal, and the correctness of the charge of the court, are not controverted.
First, as to the jurymen. Thirteen cases are presented in the record, the last one, after the defendants had exhausted their seventy peremptory challanges, all of which, it is contended, were incompetent, according to the tests heretofore prescribed by this court, in various cases, and particularly in Moses vs. The State, 10 Humph., 456-460; and in 11 Humph., Moses vs. The State, 232. These being the most recent cases in which all the former decisions are reviewed, and the rules laid down well considered, the ruling of the court below, in this case, must be tested by them.
By these decisions, we consider it to be well settled, that the mere fact that a person has an opinion; “has made up his mind;” as to the guilt, or innocence of the prisoner, does not render him an incompetent juryman. The rule is, that it does disqualify him:
First: “Where it is formed upon his own knowledge of the facts, or a statement of them by the witnesses,- or others professmg to know the circumstances.
Secondly: Where the opinion is entertained, but from the examination, it is left doubtful whether it is formed as above stated, or not.
*583 But if formed from rumor ^ or i-eport, it does not disqualify bim.
In the first case, it is considered, as stated by tbe court in the case in 10 Humph., 458, that this opinion is formed upon a rational ground of belief; but in the last, it can only be regarded as a vague impression, having no reasonable foundation to rest upon.
The reason for the distinction, is thus given by the court in that case: “In the former case, the juror will not be admitted, because the law supposes that his judgment may be improperly influenced, perhaps unconsciously, by the opinion which pre-occupies his mind, and that he is incapable of weighing the evidence with that perfect fairness and impartiality, which might reasonably be expected from one who enters the jury box, with no preconceived, fixed opinion. But in the latter case, there is no previous, fixed opinion, requiring the force of countervailing evidence to displace; and there is no sufficient reason to distrust the capability of the juror to do impartial justice to the accused.”
So, it will be seen, that it is well settled, both by, reason, and the positive rules laid down, that it is not the existence of an opinion, either way, which consti-. tutes the disqualification, but the grounds upon which it is formed; or, it might be speaking more correctly to say, that the law does not regard it as an opinion at all, unless it is based upon a knowledge, or reliable information of the facts.
Now, upon this part of the case, it only remains to be examined, whether, under these rules,, the circuit judge erred in deciding that the jurors in the present case, in view of the facts set forth in the bill of exceptions, were competent, and should be put to the prisoners..
*584 ít is unnecessary to notice each of the thirteen cases, as they are all very nearly alike, being opinions formed from rumor with but little variety of statement. A few of the cases, two only, will be copied from the record.
“N. Pate stated that he had heard that Peck’s negroes had killed him, that • he believed it, and does now, and could not do otherwise, as he had the evidence of the country. And on the facts aforesaid he had formed an opinion, which he now entertains. That it was upon rumor he formed this opinion; that he has a bias upon his mind, and has had it ever since, from these circumstances.”
“G-. W. Simpson, that he had formed an opinion upon mere rumor; that the rumor was the common chat of the neighborhood, that Peck’s negroes had killed him; that he believed the rumor then and now, and upon it formed his opinion, which he now entertains.”
These are considered the strongest cases. If they were competent, all the others were clearly so. And we are of opinion that they were competent, and qualified jurors, according to the legal tests established by the decisions of this court in former cases, and set forth above in this opinion.
Pate had formed an opinion, then entertained it, and .had “ a bias upon his mind.” But he expressly states that this. opinion and bias, were produced by, and rested entirely upon “rumor,” upon “the evidence of the country.” That is, it was the general belief of the people that Peck’s negroes killed him, and on that account he believed it. Is not this the most vague and unsubstantial ground upon which an opinion could be based? Can it be for a moment supposed that it could have the weight of a feather upon the mind of any *585 rational man, duly sworn to perform a solemn duty, involving tbe life of a fellow creature ? He bad beard no facts and circumstances, from “ witnesses or any other person professing to know them,” but be grounded bis opinion upon rumor, and tbe general talk of tbe country.
In tbe case of Moses, 10 Humph., in which tbe court go a step beyond any previous case, and establish a new rule, or rather a qualification of tbe old one, to-wit: that if it be doubtful, from tbe examination, whether the opinion is formed on rumor or not, the juror should be rejected; the juror was asked by the court “if his information was from any of the witnesses, or persons who knew the facts; ” and he said he “ did not know, or even know the witnesses in the cause.” Although he had first said he had from rumor formed his opinion, yet, when he came to be further examined, he said he did not know, but left it to be inferred that he might have heard the witnesses. So, it was upon this uncertainty as to the grounds of his opinion that he was declared incompetent. But here, there is no uncertainty. The juror expressly declares that “it was from rumor he formed this opinion.” He says, in effect, he could not do otherwise than believe that Peck’s negroes killed him, because such was the general belief of the country. Not that he had heard any of the circumstances, or what evidence existed, or whether any, but that it was so rumored and reported in that neighborhood, and therefore, he believed it. y
An opinion thus formed, we can only regard as a mere hypothetical opinion, or vague impression, having no reasonable foundation to sustain it, and not at all calculated to prevent a free investigation of truth, and the render *586 ing of an impartial verdict according to tbe evidence and tbe law.
To tbe other juryman, there can be no objection, unless it be that the opinion formed from rumor “ be now entertains.” We do not believe that tbe fact that the opinion is still entertained, makes any difference. That is not incorporated as an element in tbe rule. It is immaterial whether the opinion has been changed, or still remains, provided it is formed on mere rumor. It is not regarded by the law as an opinion, but a mere impression which will present no obstruction to the force of evidence and power of truth.
We think that this court has heretofore gone far enough for all the purposes of justice, in granting new trials, upon objections of this kind, to the action of circuit judges, and we are not disposed to make the tests more stringent. Yet, we do not disapprove, or intend to depart from the rules which have been settled in former cases, as we understand and now explain them. The constitutional right of every citizen, to have “ a speedy public trial by an impartial jury,” should be carefully guarded, and firmly sustained by the courts. It must not be infringed, on any account. The most perplexing difficulties have arisen on this subject, in the empannelling of juries. It is often exceedingly difficult to apply airy rule which will enable the judge to clearly draw the line, between an opinion which will leave the juryman partial and biased, inclined to one side, and that which is so insubstantial as' to leave him “impartial,” and capable of weighing the evidence in even scales, and forming a fair and impartial judgment. To free the subject, as far as possible, of its inherent difficulties, the rules before stated, have been established upon great consideration, in *587 former cases, and we now do nothing more than to test the cases before ns, by them. Bules more relaxed, would render it almost impracticable to get a jury in any county where a great and notable crime, like the one now charged, had been perpetrated. In such cases, it cannot be expected that the tongue of rumor will be still, or that the public mind will remain quiet. Experience and observation prove, that, in all such cases, tire stories which float over the agitated sea of the public mind, are as numerous as they are unreliable; and it cannot be presumed that any “ good and lawful citizen” will permit an opinion formed upon such stories and rumors, to influence his judgment in the jury-box, sitting upon the life or liberty of a fellow-being, under an oath to decide upon the law and evidence, as they shall be delivered to him, by the court and witnesses. The rule itself, which excludes for a formed opinion, is founded upon the frailty and imperfection of human nature. It is grounded on the apprehension, that the belief which exists in the mind, will disincline the juror to yield to the weight of any evidence tending to produce an opposite belief. This bias, it is supposed, may result, either from natural infirmity, or the law of mind, which would be innocent and faultless; or it may proceed from pride of opinion, or prejudice, which would be highly reprehensible. But all these considerations have had their due weight in the establishment of the rule, and its limitations. With these, as they stand, and are stated above, we are content, but not inclined to go any further in staying the sword of justice, after trial and conviction, on objections of this character ; the effect of which, if carried further, would be' in a majority of cases, to favor the escape of the guilty, *588 or to protract and increase tbe burthen of criminal proceedings, rather than promote the ends of justice, or the protection of the innocent.
The second question raised, is upon the admissibility of evidence, as to the confessions of the defendants.
It is not controverted by the Attorney General that the confessions made previous to the investigation before the committing court, were attended by such circumstances, as to render them incompetent. So ruled the court below, and the only objection is, that they were permitted to go to the jury. We cannot sustain this objection. The court expressly stated to the jury that the evidence was illegal and must not be regarded by them. But confessions of the defendants were taken down by the committing magistrate, on their examination before him, and this was admitted as evidence to the jury against the objection of defendants’ counsel. Was this legal evidence?
By the act of 1115, ch. 10, § 1; Oar. & Nich., 426, it is made the duty of the magistrate to “record the examination of the party” who is brought before him on any criminal charge, as well as “the full matter given in evidence both against and for him, with all concurring circumstances. * which examination so taken shall be returned to the office of the court wherein the matter is to be tried under the penalty,” &c. Bor what purpose is this required to be done? It cannot be used as evidence for him, unless it is made so by the State, as we decided at last term at Nashville, in the case of Nelson vs. The State, because he cannot be allowed to make evidence for himself. But if he be cautioned by the magistrate that whatever he may say may be used against him, and *589 that be is not bound to criminate bimself, but tbat it is bis privilege to submit to an examination or not, at bis option, there certainly can be no good reason wby any statements or confessions be may make under such circumstances should not be good evidence against him. It would seem absurd to allow admissions and confessions freely made, to be proved by witnesses who beard them, and exclude those made in like manner and written down at the time by a sworn officer of the law. A confession made before the magistrate, as well as any where else, under the flattery of hope or the torture of fear, under the influence of promised favor or dreaded injury and barm, come in too questionable a shape to be entitled to any credit, and are consequently improper evidence. This examination of one accused of crime is considered as a privilege in bis favor. It is offered by tire law to enable him, if innocent, to clear bimself of suspicion. This be may sometimes be able to do by the developement of circumstances which will dispel the clouds which seem to hangover him, and thus secure bis discharge. He may disclose bis defense, remain silent, or if bis guilt bears heavily upon bis conscience, make a full confession of bis crime. There is no coercion; it is free and voluntary, and under a full knowledge of bis rights, if the magistrate does bis duty, as was done- in this case.
The statutes of 1 and 2, Phil, and Mary, ch. 13, § 4; and the 2 and 3, of the same, ch. 10, are very similar to our act of 1715, on the same subject. The practice of the English courts, under those acts, as set forth in 1 Chitty’s Crimi. Law, 75 to 88, sustain the positions we now lay down, as the law of this State.
*590 If the confession is written down by the magistrate, that is the proper evidence, and the particulars of such examination, it seems, cannot be given in evidence, mma ■mee, but this can only be done where it is proved that it was not committed to writing; 1 Chitty’s Crinr. Law., 87. This, of course, is impeachable, like any other evidence, by the defendant.
In the case before us, we think the confessions were freely and voluntai’ily made, under, proper cautions from the examining justice, and written down in due form. They were properly admitted as evidence to the jury, and were amply sufficient to establish the guilt of the prisoners, beyond all doubt. There is no conflicting evidence; nothing to impair their force, or to excite the least suspicion of their truth.
There being, then, no error in the proceedings, and judgment of the court below, we affirm them.
McKiNNey, J., dissented.