Louis Allen McCRACKEN, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

March 11, 1975.

Certiorari Denied by Supreme Court June 30, 1975.

E. G. Moody, Kingsport (appointed), for plaintiff in error.

Milton P. Rice, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, for defendant in error.

## OPINION

OLIVER, Judge.

Louis Allen McCracken, an inmate of the State Penitentiary where he is serving three consecutive felonious assault sentences of not less than three nor more than 18 years adjudged in the Criminal Court of Sullivan County on January 28, 1972 while represented by appointed counsel, as he is in this proceeding, has appealed to this Court from the judgment of that court dismissing his post-conviction petition after an evidentiary hearing. His felonious assault

convictions and sentences were affirmed on direct appeal to this Court. *McCracken v. State* (Tenn.Cr.App.1972), 489 S.W.2d 48.

■ We may take judicial notice of the record of the petitioner's direct appeal to this Court. *State ex rel. Leighton v. Henderson,* 1 Tenn.Cr.App. 598, 615, 448 S.W.2d 82; *Canupp v. State,* 3 Tenn.Cr.App. 249, 250, 460 S.W.2d 382; *State ex rel. Brown v. Newell,* 216 Tenn. 284, 391 S.W.2d 667. Accordingly, we have carefully reviewed McCracken's entire trial record.

It is well to mention at the outset that relief under our Post-Conviction Procedure Act is granted ". . . when the conviction or sentence is void or voidable because of the abridgement in any way of any right guaranteed by the constitution of this state or the Constitution of the United States, including a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right." TCA § 40–3805.

In his present petition McCracken charged that he was denied his right to a preliminary hearing, that he was never advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 nor allowed to call an attorney, that he was denied his right to an attorney at his arraignment, that his appointed trial attorneys inadequately and ineffectively represented him because they did not call his available subpoenaed witnesses and tricked him into keeping his witnesses off of the witness stand by assuring him that in the event of conviction he would be granted a new trial in 30 days, and that the verdicts of the jury were improperly rendered in the assault cases because the trial judge required the jury to state its verdict separately in each case. In his petition he also included a motion for a copy of the transcript of his original trial. In his Assignments of Error here he complains that the trial judge ruled against him on each point.

In the evidentiary hearing upon this petition, McCracken testified he was arrested June 21, 1971 and was indicted on June 29, 1971 and arraigned later the same day; that the same day, June 29th, when he was taken to Bristol for a preliminary hearing which he had requested, the officers escorting him were told by Deputy Sheriff Teamer that the grand jury had already returned eight indictments against him and instructed them to return him to jail. (The original trial record brought before this Court on the defendant's direct appeal shows that the three felonious assault presentments and also five kidnapping presentments were returned against the defendant by the grand jury on June 29, 1971, each charging the offense was committed on June 21, 1971, and James Teamer was named as the prosecutor in each presentment). He said he was denied a preliminary hearing and that no attorney had been appointed for him at that time and he had not been advised that he was entitled to counsel. He conceded that the presentments against him were returned before he requested a preliminary hearing, and also stated he knew of no way he was prejudiced by not having a preliminary hearing.

McCracken also testified that on Thursday, June 24, 1971, three days after he was arrested, he was taken to a room in the jail and there questioned by Deputy Teamer; that he was never advised of any of his rights at that time and was not allowed to make a telephone call to a lawyer although he asked permission to do so; that he does not know what he told Officer Teamer, if anything, which would incriminate him and does not know what the officer did with the information he obtained in the interview; and that he did not subpoena Teamer for the evidentiary hearing.

With reference to his trial counsel, the petitioner testified that counsel was first appointed for him on July 7, 1971; that that attorney withdrew and some three weeks later another was appointed; that the latter also withdrew, purportedly because of their inability to get along; that the two attorneys who finally represented him at his trial were appointed about the

first of September and his trial began on October 5, 1971; and that, until he was found guilty, he had no complaints against his trial counsel. He said "They tried."

With respect to his charge that his attorneys assured him he would be granted a new trial if convicted, the petitioner testified that while the last prosecution witness was testifying, his appointed Attorney Edwards told him that he should not testify or present any witnesses, because they had reached an agreement with the judge and the Attorney General that he would get a new trial within 30 days, and his other trial counsel (Attorney Tate) was present when Edwards told him of the agreement; that neither the District Attorney General nor the trial judge ever said anything to him about any such agreement.

Concerning his charge that his trial attorneys did not call his witnesses, he testified they did not call three named witnesses he had them subpoena, and that he asked them to subpoena four other named witnesses and they failed to do so. But he also conceded that he did not know what any of those persons would have testified if they had been called as witnesses.

■ According to the petitioner, the gist of his complaint about the manner in which the jury announced the verdicts was that the trial judge asked the jury to specify in each of the assault cases the name of the person assaulted. Where by consent several indictments against an accused are tried together, a separate verdict must be rendered on each and the jury should distinguish between the indictments in their verdicts. 23A C.J.S. Criminal Law § 1404; *Fontaine v. State,* 65 Tenn. 514.

Attorney Wythe Edwards, one of the petitioner's appointed trial attorneys, testified that he never guaranteed the petitioner a new trial; that he talked several times with the petitioner about the case and that it was the petitioner himself who decided, during a trial recess, not to put on a defense; that the petitioner and the two trial attorneys had a complete discussion con-

cerning the options available to him and he then decided not to testify or put on any witnesses; that he interviewed all the witnesses the petitioner mentioned to him; and that he appealed the conviction all the way to the Tennessee Supreme Court and was able to get five of the eight convictions reversed on appeal. The other appointed trial attorney for the petitioner testified that he never heard Edwards guarantee the defendant a new trial, nor did he ever do so himself, and that it was the defendant who made the decision not to put on any defense.

The record of the petitioner's trial shows that an attorney was appointed to represent him on 2 July 1971 and was released upon his own motion on July 6th and two other attorneys were appointed to represent the petitioner on the same day; that the latter two were relieved upon their motion on July 30, 1971 and Attorneys Edwards and Tate were appointed on that date; and that the trial began October 5, 1971 and was concluded the following day.

■ The law is settled in this State that a preliminary hearing is not constitutionally required. *Shadden v. State* (Tenn. Cr.App.), 488 S.W.2d 54, cert. den. 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199; *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1; *McKeldin v. State* (Tenn.S.Ct.1974), 516 S.W.2d 82. And when, as in this case, after an indictment or presentment has been returned against an accused by the county grand jury, representing its finding of probable cause to believe that he committed the offense charged therein, clearly a preliminary hearing to re-determine the same question is not required. TCA § 40–1131; *Shadden v. State,* supra.

■ The petitioner's claim that he was arraigned without an attorney is refuted by the trial court's Minutes, which show that when he was called to plead to the presentments on July 2, 1971 the trial judge found him to be indigent and appointed Attorney Frank Slaughter to represent him and that

no pleas were made at that time nor until the trial began on October 5, 1971.

■ It is a settled principle of law that the duly authenticated Minutes of a court import absolute verity and may not be contradicted or impeached by collateral attack in post-conviction proceedings. *State ex rel. Newsom v. Henderson,* 221 Tenn. 24, 424 S.W.2d 186; *State ex rel. Folds v. Hunt,* 216 Tenn. 195, 391 S.W.2d 629. "So far as they are records of judicial proceedings, they import absolute verity, and are conclusive unless attacked for fraud." *Howard v. State,* 217 Tenn. 556, 399 S.W.2d 738.

The authenticated trial transcript filed here by the petitioner as his Bill of Exceptions shows affirmatively, contrary to his contention now, that he was permitted to make a telephone call at the jail. There is nothing whatever in that record to indicate whether or not he was subjected to custodial interrogation, but the record contains no reference by any witness to any custodial statement by the petitioner.

■ Testifying in his evidentiary hearing about his request for a copy of his trial record, the petitioner said he earns only about $14.00 a month in prison and is indigent. He said he wanted a copy of his trial transcript because he could not remember everything that happened or was said in the trial and he wanted to look for something. He conceded that he wanted it just to go on a fishing expedition through it to see what he could find. TCA § 40–3813 does not obligate the State to furnish at its own expense a complete record of his trial to a petitioner until and unless he demonstrates to the satisfaction of the trial court, after filing his post-conviction petition, that the record or requested portions of it will be of reasonable assistance to him in establishing his right to the relief sought. *Dotson v. State* (Tenn.Cr.App.1971), 477 S.W.2d 763. See also: *Jones v. State,* 3 Tenn.Cr.App. 76, 457 S.W.2d 869; *Elliott v. State,* 222 Tenn. 294, 435 S.W.2d 812; *Hardy v. U. S.,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331. The trial court committed no error in declining to furnish the petitioner with a free transcript of his original trial record.

At the conclusion of the evidentiary hearing, in a somewhat detailed finding of facts the trial judge rejected each of the petitioner's claims.

■ In considering Assignments of Error challenging the correctness of the trial judge's findings and dismissal of the petitioner's petition, we are bound to adhere to the settled rule that the findings of the trial court, upon questions of fact, are conclusive unless this Court finds that the evidence preponderates against the lower court's judgment. Such findings of a trial judge in an oral hearing, who sees and hears the witnesses testify, and hears and considers conflicting testimony, will be given the weight of a jury verdict. *Miller v. State* (Tenn.Cr.App.), 508 S.W.2d 804; *Bratton v. State* (Tenn.Cr.App.), 477 S.W.2d 754. In this case we cannot say that the evidence preponderates against the trial court's findings.

■ In a habeas corpus or post-conviction proceeding, the burden is on the petitioner to prove his allegations attacking the validity of his conviction. *Miller v. State,* supra, and cases therein cited. This petitioner has failed to carry that burden.

■ But over and beyond all we have said with reference to the petitioner's allegations and his Assignments of Error here, it should be noted that he is also precluded from raising all of those questions and waived them by his failure to raise them in his motion for a new trial in the trial court and in his direct appeal to this Court. *Arthur v. State* (Tenn.S.Ct.1972), 483 S.W.2d 95; *Pruett v. State* (Tenn.S.Ct.1973), 501 S.W.2d 807.

Affirmed.

DWYER, J., concurs.

GALBREATH, Judge (concurring).

I find it inappropriate and inaccurate to state that "it is a well settled principle of

law that the duly authenticated Minutes of a court import absolute verity and may not be contradicted or impeached by collateral attack in post-conviction proceedings." As noted in the next sentence by the majority, the minutes of a court may be attacked for fraud. Mistake is another grounds for challenging the authenticity of a minute entry. Surely a petitioner who could successfully prove by the trial judge and others in a position to know that the minute entry fixing his punishment at ten years in the penitentiary was inaccurate in that a zero had been inadvertently added by the clerk and signed by the judge so as to seemingly add nine years to a one year sentence. The reason and logic making such error curable in post-conviction proceedings is embodied in the American Bar Association Standards Relating to Post Conviction Procedure:

> A duly authenticated record or transcript, or portion thereof, may be used in evidence of facts and occurrences during prior proceedings. Such record or transcript should be subject to impeachment by either party. Standard 4.6(c)(i)

With this observation, I concur in Judge Oliver's opinion.