**Elijah WAUGH, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

April 18, 1978.

Charles J. Cassell, Memphis, for petitioner.

Jack E. Seaman, Asst. Atty. Gen., Nashville, for respondent; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

In this criminal case, which is before the Court in two separate appeals, we deal with recurring problems of interpretation and application of our preliminary hearing statutes.

After the defendant Waugh's arrest on March 13, 1975, he was formally charged in a warrant with the offense of robbery with a deadly weapon and on March 14, 1975, was brought before the city court of Memphis for a preliminary hearing. Upon the defendant's request to confront and examine all of the State's witnesses against him, specifically the victim and arresting officers, the hearing was reset for March 21. On that date, defendant's request was denied, and the only witness to testify at the hearing was the investigating police officer, Sgt. Pitts, who based his testimony on police reports only, since he had no personal knowledge of the facts. He testified that the defendant and a companion had been arrested within two to three minutes after the robbery of a "Seven-Eleven" store in Memphis at a location less than one mile from the store which had been robbed. He further stated that the police had based their stopping of the defendant's car upon a radio dispatch description given by the robbery victim. Approximately $46.00 was taken from the store, $11.00 to $12.00 in quarters. When Waugh was stopped and searched, approximately $10.00 in quarters was found on his person. He further stated that the victim had made a positive identification of Waugh at a line-up.

It was solely upon this hearsay testimony of the investigating officer that the city court judge determined that probable cause was shown. Defendant Waugh was bound over for action of the grand jury on a plea of not guilty.

On April 2, 1975 counsel for defendant filed a motion in the criminal court of Shelby County to dismiss the bind-over order upon the ground that the defendant had not been afforded a preliminary hearing in accordance with T.C.A., § 40–1131, in that he had not been afforded confrontation with and examination of all witnesses in connection with the charge of robbery with a deadly weapon. The trial judge sustained the defendant's motion, concluding that the defendant had not been afforded the kind of preliminary hearing to which he was lawfully entitled, and, on April 4 an order was entered dismissing the bind-over order.

Thereafter, on April 8, 1975, the grand jury of Shelby County issued an indictment against defendant Waugh charging him with robbery by means of a deadly weapon and with carrying a pistol. Pursuant to T.C.A., § 40–1131, a plea in abatement to these indictments was filed by defense counsel on April 10, which was within thirty days of his arrest, and on April 18, 1975, thirty-one days after his arrest, this plea in abatement was sustained by the same trial judge who had granted the defendant's previous motion to dismiss the bind-over order.

The State appealed the court's judgments in both proceedings, and insisted that the defendant could lawfully be bound over to the grand jury upon a preliminary hearing at which only hearsay testimony was introduced. Additionally, the State asserted that the criminal court was without jurisdiction to grant the defendant's plea in abatement after more than thirty days had elapsed following his arrest, although the plea had been filed within thirty days of the arrest. The Court of Criminal Appeals reversed the dismissals of the bind-over order and the indictments, reinstated the indictments and remanded the case for further proceedings. We granted the defendant's petition for certiorari.

The proper determination of the rights of the parties depends upon our construction of certain statutes, especially T.C.A., § 40–1131, which provides:

"In all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary

hearing upon his request therefor, whether the grand jury of the county be in session or not.

"If the accused is indicted during the period of time in which his preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may abate the indictment upon motion to the court. Provided, however, that no such motion for abatement shall be granted after the expiration of thirty (30) days from the date of the accused's arrest."

Because "those who would trim trees in the garden of law must also undertake to dig around the roots," 30 Va.L.Rev. at 193, a glance backward in history may assist us in reaching a proper construction of these statutes. T.C.A, § 40–1131, is a comparatively recent enactment, the first paragraph having been passed in 1971[1] and later amended by the addition of the second paragraph in 1974.[2] The origin of an accused's right to a preliminary hearing, however, reaches back to two statutes of sixteenth-century England which created an inquisitorial proceeding intended to prevent the indiscriminate release of apprehended criminals. T. Plucknett, *A Concise History of the Common Law,* 407–08 (4th ed. 1948).

In 1554 Parliament required that before a person accused of manslaughter or any felony could be released on bail, a magistrate must

"take the Examination of the said Prisoner, and information of them that bring him, of the fact and circumstances thereof, and the same, or as much thereof as shall be material to prove the Felony, shall be put in Writing. . . ."—1 & 2 P. & M., ch. 13, sec. IV (1554).

When a person was indicted for murder or manslaughter at a coroner's inquest, however, the coroner was simply required to "put in Writing the effect of the evidence

given to the [coroner's] Jury before him, being material." *Id.,* sec. V. Professor Holdsworth was of the opinion that the remarkable difference between the character of the examination conducted by the magistrate and that held by the coroner was due to the fact that in the magistrate's examination,

"there was an accusation definitely formulated against some specific person, which must be presented by the grand jury before the prisoner was arraigned; whereas [at the coroner's inquest] there was simply an inquiry at large into the facts, resulting in a presentment, on which the accused could be at once arraigned, without the need for any further presentment before the grand jury."—IV W. Holdsworth, *A History of English Law* 529 (1924).

See also I Stephen, *A History of the Criminal Law of England* 218–19 (1883). Thus, Holdsworth concluded, "[t]he nature of the inquiry and the character of the subsequent proceedings naturally affected the character of the preliminary examination." Holdsworth, *supra,* at 529.

The provisions of the 1554 statute relating to the preliminary examination before the magistrate applied only when the prisoner was bailed because the primary object of the statute was to settle the procedure in cases where bail was applied for. Because it became clear that some preliminary examination was as useful when the prisoner was *committed* as when he was bailed, a statute was enacted in 1555, 2 and 3 P. and M., ch. 10, requiring an examination by a magistrate in these cases as well. Holdsworth, *supra,* at 529.

Under these English statutes the magistrate acted more as a public prosecutor than as a judicial officer. The criminally accused was closely interrogated in secret, not informed of the evidence against him, nor entitled to legal counsel at the examination. The preliminary examination thus served a

---

1. Tenn.Pub. Acts of 1971, ch. 245, § 2.

2. Tenn.Pub. Acts of 1974, ch. 701, § 1. T.C.A., § 40–1131, was further amended in 1976, dispensing with the requirement that the accused *request* a preliminary hearing. Pub. Acts of 1976, ch. 760, § 1.

vital discovery function for the prosecution. Weinberg and Weinberg, *The Congressional Invitation to Avoid the Preliminary Hearing,* 67 Mich.L.Rev. 1361, 1365 (1969).

The basic English preliminary examination statutes were in effect in this country both before and after the Revolution. Kauper, *Judicial Examination of the Accused,* 30 Mich.L.Rev. 1224, 1235–36 (1932). As stated by an early commentator on Tennessee law, "Our statute in relation to the commitment of criminals, passed 1715, appears to be the same in substance as 1 and 2 sections, P. and M. chap. 13, passed 1554." J. Quarles, *Criminal Code and Digest,* 366 (1874). The practice of inquisition, however, did not accompany the preliminary hearing to America because of early constitutional guarantees against self-incrimination. *A.L.I. Code of Criminal Procedure* 271–73 (1930). See generally Pittman, *The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America,* 21 Va.L.Rev. 763 (1965).

The accused's statutory right to a preliminary hearing in Tennessee antedates our statehood. When the Southwest Territory was organized there was, under North Carolina law, a provision that

". . . no person within this province, shall be committed to prison for any criminal matter until examination thereof be first had before some magistrate which magistrate shall admit the party to bail, if bailable, and shall record the examination of the party and also, the full matter given in evidence, both against him and for him, with all concurring circumstances, and shall take recognizance, with good and sufficient securities, to our sovereign lord the king, for the informer to appear and prosecute as the laws of the kingdom of Great Britain and this province do direct; and likewise, for all evidences for the king to appear and give evidence against the criminal, at the next court, where the matter is cognizable, ensuing such examination; which examination and recognizances so taken, shall be returned to the office of the court wherein the matter is to be tried. . ." Laws of North Carolina, 1715, ch. 16.

In 1789 North Carolina passed a Cession Act offering the area of what is now Tennessee to the federal government. N.C. Pub. Acts of 1789, ch. 3. Ten conditions were placed on North Carolina's offer, the eighth providing that

". . . the laws in force and use in the state of North Carolina at the time of passing this act, shall be and continue in full force within the territory hereby ceded until the same shall be repealed, or otherwise altered by the Legislative authority of the said territory."

The land offered by North Carolina became the Southwest Territory in 1790 upon congressional approval of the Cession Acceptance Act, Stat. 106, ch. 6; thus the laws of North Carolina were officially adopted at that time.

Finally, the first constitution of this state, adopted in 1796, incorporated into the law of Tennessee the North Carolina statute which was itself derived from the sixteenth-century English statutes requiring examination by a magistrate:

"All laws and ordinances now in force and use in this Territory, not inconsistent with this constitution shall continue to be in force and use in this State, until they shall expire, be altered, or repealed by the legislature." Tennessee Constitution of 1796, Art. X, Sec. 2.

Thus, the provisions of early English law relating to the preliminary examination of those accused of a crime were transplanted into our law. See T.C.A., § 40–604.

The 1796 Constitution also included our Bill of Rights, however, which the delegates stipulated "shall never be violated on any pretence whatever", Tenn.Const. of 1796, Art. X, Sec. 4, and has remained virtually unchanged to this day. The delegates were especially mindful of the rights of those accused of crime, adding important rights not found in the North Carolina constitution which the delegates apparently used as a model. Laska, *A Legal and Constitutional History of Tennessee,* 6 Mem.St.L.Rev. 563, 595 (1976). Thus, Art. XI, Sec. 9 of our 1796 Constitution provided:

"That in all criminal prosecutions the accused hath a right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the county or district in which the crime shall have been committed; *and shall not be compelled to give evidence against himself.*" (Emphasis added.)

These words of our first Constitution altered the nature and function of the preliminary examination from the inquisitorial proceeding of the English statutes to an impartial judicial inquiry. Thus, the preliminary hearing evolved full circle into a safeguard for the defendant, protecting him from unfounded charges.

As Justice Rutledge has pointed out: "Historically it was the preliminary inquisition which gave rise to the privilege [against self-incrimination]. It was won through centuries of struggle against abuses of magisterial as well as more formal judicial inquisition. The modern hearing is the lineal descendant of the ancient preliminary examination. But its character has changed with the evolution of the privilege and other constitutional guaranties." *Wood v. United States,* 75 U.S.App.D.C. 274, 280, 128 F.2d 265, 271 (1942).

The constitutional guarantees further established the distinctly adversarial nature of the preliminary hearing; the accused was guaranteed the right to counsel, to confront witnesses against him and to produce witnesses in his defense. Tennessee Constitution of 1796, Art. XI, Sec. 9. See 1858 Code, §§ 5048, 5056, 5057. Section 5063 of the 1858 Code provided:

"Upon the *whole evidence,* if it appears to the magistrate that no offense has been committed, or that there is no prob-

able cause for charging the defendant therewith, he shall be discharged." (Emphasis added.)

An 1899 enactment,[3] repealed by the Legislature in 1971,[4] limited the right to a preliminary examination to those arrested without a warrant and those arrested under a warrant when the grand jury was not in session. The 1971 act, codified as T.C.A., § 40–1131, provided, however, that:

"[i]n all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary hearing upon his request therefor, *whether the grand jury of the county be in session or not.*" Tenn.Pub. Acts of 1971, ch. 245, § 2 (Emphasis added.)

In addition to the history hereinabove related, we are also aided in our construction of the statute by the opinion of the United States Supreme Court in *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) and of this Court in *McKeldin v. State,* Tenn., 516 S.W.2d 82 (1974).

In *Coleman, supra,* the Supreme Court recognized the importance of the preliminary hearing's screening function, holding that Alabama's preliminary hearing was a "critical stage" of the state's criminal process at which the accused is entitled to the aid of counsel. "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution." *Id.* 399 U.S. at 9, 90 S.Ct. at 2003.

We held in *McKeldin, supra,* that the Tennessee preliminary hearing is a critical stage of the criminal prosecution at which certain significant rights may be sacrificed and, therefore, that an indigent defendant has a right to competent counsel at that proceeding. We also recognized in *McKeldin* that the importance of the preliminary hearing as a discovery tool for the defense could not be ignored.

---

3. Tenn.Pub. Acts of 1899, ch. 16; codified as T.C.A., § 40–402 (1955), repealed by Tenn.Pub. Acts of 1971, ch. 245, § 1.

4. Tenn.Pub. Acts of 1971, ch. 245, § 1.

The primary responsibility of the magistrate at a preliminary hearing is to determine whether the accused should be bound over to the grand jury. "This examination of one accused of crime is considered as a privilege in his favor. It is offered by the law to enable him, if innocent, to clear himself of suspicion." *Alfred and Anthony v. State,* 32 Tenn. (2 Swan) 581, 589 (1853). If, "upon the whole evidence," the examining magistrate finds (1) "that no offense has been committed" or (2) "that there is no probable cause for charging the defendant therewith," he must discharge the defendant. T.C.A, § 40–1116. But, "[i]f it appear that an offense has been committed, and there is probable cause to believe the defendant guilty thereof . . ." the accused must be committed to jail or admitted to bail to await the action of the grand jury. T.C.A., § 40–1117.

In *Myers v. Commonwealth,* 363 Mass. 843, 298 N.E.2d 819 (1973), the Massachusetts court has pointed out that

> "[t]hese two requirements are designed to establish an effective bindover standard which distinguishes between groundless or unsupported charges and meritorious prosecutions. Thus, the preliminary hearing's primary function is to screen out at this early but critical stage of the criminal process those cases that should not go to trial thereby sparing individuals from being held for trial, and from being unjustifiably prosecuted." *Id.* 298 N.E.2d at 822–23.

The preliminary hearing is not a "judicial rubber stamp for prosecutorial discretion." See Graham and Letwin, *The Preliminary Hearing in Los Angeles,* 18 U.C.L.A.L.Rev. 636 (1971). The function of the preliminary hearing as the critical stage of the criminal process is realized only

". . . when it is utilized as a check on the power of the prosecution. That check assumes significance where, as in the instant case, the prosecution attempts to establish probable cause on the basis of second-hand hearsay testimony." *Maestas v. District Court In & For the City and County of Denver,* Colo., 541 P.2d 889 (1975).

We, accordingly, reaffirm that the purpose of the preliminary hearing is to determine whether there is evidence sufficient to justify the continued detention of the defendant and subjecting him to the expense, embarrassment, humiliation, and inconvenience of a trial. *See Alfred and Anthony v. State, supra.* In light of this purpose and the significance of the preliminary hearing under our law, we conclude that, except for documentary proof of ownership and written reports of expert witnesses, probable cause to bind over the defendant to the grand jury must be based upon legally competent evidence which would be admissible at trial. *See* Proposed Rules of Criminal Procedure of Tennessee, Rule 5.1(a).[5] Admission of incompetent evidence, however, will not invalidate a bindover order if the magistrate also had before him competent evidence sufficient in itself to establish probable cause. *Cf. Gammon v. State,* Tenn.Cr.App., 506 S.W.2d 188 (1973). But if only evidence which would be inadmissible at trial is introduced at the preliminary hearing, the hearing will fail in its function of screening out unfounded charges, *Maestas v. District Court, supra,* and will violate the defendant's right to a preliminary hearing.

Our exclusion of hearsay as an adequate basis for determining probable cause at a preliminary hearing does not mean that we fail to recognize that a lesser quantum of

---

5. Following preparation of this Opinion but prior to its release the Tennessee Rules of Criminal Procedure proposed by this Court were approved by the General Assembly and the Governor. Rule 5.1(a), in pertinent part provides:

> "The finding that an offense has been committed and that there is probable cause to believe that the defendant committed it shall

be based upon evidence which may not be inadmissible hearsay except documentary proof of ownership and written reports of expert witnesses."

Of course, this right of the defendant may be waived by failure to interpose proper and seasonable objection to the hearsay; if admitted without objection, hearsay could constitute sufficient evidence.

proof, "probable cause," is required to hold an accused person for trial than is required to support a conviction, "proof beyond a reasonable doubt." Our holding looks to the purpose to be served by the preliminary hearing and restricts the *type* of proof to that which adequately effectuates that purpose.

We hold that the purported preliminary hearing in this case was invalid and that the trial court was correct in granting the defendant's motion to dismiss the bind-over order under which he was being held in custody at the time.

Moreover, we disagree with the conclusion of the Court of Criminal Appeals that the criminal court of Shelby County was without jurisdiction to entertain the defendant's motion to dismiss the order under which he was being held. Although we are not aware of any statutory provision specifically dealing with the matter, the whole tenor and implication of our criminal code is to the effect that once a defendant, who has been arrested prior to indictment, has been committed to jail or admitted to bail by the magistrate following a preliminary hearing, as provided in T.C.A., § 40–1117, the criminal court for the county succeeds to the jurisdiction of the case and of the person of the defendant. See, e. g., T.C.A., §§ 40–1117, 40–1118, 40–1119, 40–1122, 40–1123, 40–1128, 40–1129 and 40–1707. Therefore, we hold that the circuit or criminal court thus acquiring jurisdiction of the case and the person of the defendant pursuant to the magistrate's commitment has jurisdiction to consider and determine a motion to dismiss the commitment order, as was done in this case. Cf. *Hale v. State*, Tenn., 548 S.W.2d 878 (1977).

### II

Following the entry of the order dismissing the bind-over order and freeing the defendant, the grand jury of Shelby County issued an indictment, charging the defendant with armed robbery and carrying a pistol, the same offenses which were the subject of the original proceeding. The defendant filed a plea in abatement to the indictment, grounded upon the fact that he had not been afforded a preliminary hearing as guaranteed by T.C.A., § 40–1131. Again, the trial court held for the defendant and abated the indictment. The State appealed and the Court of Criminal Appeals reversed, holding that the preliminary hearing at which only hearsay evidence was introduced was adequate. We granted certiorari.

The dismissal of the bind-over order and release of the defendant from custody on April 4 terminated the criminal proceeding which began with the arrest of the defendant. The indictment issued by the grand jury on April 8 was the beginning of a new proceeding. Was the defendant entitled to a preliminary hearing following the filing of the indictment? We hold that he was not.

It is our opinion that the statute, T.C.A., § 40–1131, entitles the defendant to a preliminary hearing only in proceedings which begin with the arrest, with or without a warrant, of the defendant; when proceedings begin with a presentment or an indictment without the accused being in custody or upon bail for the offense charged, the defendant is not entitled to a "preliminary" hearing. *Harris v. State*, Tenn.Cr.App., 534 S.W.2d 868 (1975); *McCracken v. State*, Tenn.Cr.App., 529 S.W.2d 724 (1975). Nothing in the historical development of the preliminary hearing suggests a right to a post-presentment or post-indictment determination of probable cause by a magistrate, a determination already made by the grand jury. Our Constitution has lodged that ultimate authority with the grand jury. See Tennessee Constitution, Article I, Section 14. A re-determination of probable cause by a magistrate is not required. If the legislature intends that a "preliminary" hearing shall be afforded to the defendant when proceedings begin with a presentment or an indictment without the defendant being in custody or on bail for the offense charged, it will have to say so in clear and unmistakable terms. We hold that it has not said so in T.C.A.,

§ 40–1131, as it is now written. Nor is there any constitutional mandate for such a hearing. *Coleman v. Alabama, supra; McKeldin v. State, supra; Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Having concluded that the defendant was not entitled to a preliminary hearing in the proceeding begun by the indictment, we need not consider the effect of the curious time limitation contained in the last sentence of T.C.A., § 40–1131.

We conclude that the Court of Criminal Appeals reached the correct result, albeit for the wrong reason, in reversing the action of the trial court abating the indictment.

This cause is remanded to the criminal court of Shelby County for further proceedings consistent with this opinion.

COOPER and HARBISON, JJ., concur.

FONES, J., dissenting.

HENRY, C. J., not participating.

## OPINION

FONES, Justice.

I respectfully dissent.

I concur in Section II of the Opinion and in the result mandated by that Section.

I do not agree that the history of preliminary hearings in England and America, the Tennessee statutes, *McKeldin, Hale,* or the combination thereof, require or justify this Court in mandating for the first time in our judicial history that a magistrate can only bind a defendant to the action of the grand jury upon evidence that would be legally competent and admissible at the trial of the case.

I do not agree with the action of the Court in conferring appellate jurisdiction upon the criminal courts of this State to provide defendant with a review of the scope of a preliminary hearing, the admissibility of evidence therein and the weight of

the evidence adduced on the issue of probable cause. Regardless of its outcome, the grand jury determines who must face trial on the merit of charges, not the magistrate. A magistrate's decision that there is probable cause does not assure further prosecution; a decision that there is no probable cause does not preclude further prosecution. *State v. D'Anna,* 506 S.W.2d 200 (Tenn. Crim.App.1973). The magistrate's judgment will not forestall the prosecution of a single defendant indicted by Tennessee grand juries. In Tennessee, a defendant cannot be brought to trial except upon an indictment by the grand jury. Tenn.Const. Art. I, § 14; Tenn.Code Ann. § 40–301.

Waugh's "Motion To Dismiss Warrant," the vehicle used to appeal the magistrate's ruling to the Criminal Court of Shelby County, asserts that he was denied the right of "confrontation and examination of witnesses," citing *McKeldin v. State, supra,* as authority. I do not read *McKeldin* as guaranteeing to defendant the right of confrontation of witnesses. The United States Supreme Court in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), expressly said, with respect to confrontation and cross-examination,

> "[t]hese adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment." 420 U.S. at 120, 95 S.Ct. at 866.

The significance of history and the current state of the law in America to me is that good hearsay [1] has always been, and continues to be sufficient to support a finding of probable cause by a magistrate at a preliminary hearing in the federal system and virtually every state in the union that has a preliminary hearing.

## I.

No direct authority has been cited by the majority to justify its departure from *stare decisis* and require legally admissible evidence at a preliminary hearing. They do not assert that the phrase "upon the whole evidence," that has been in our statutory

---

1. Hearsay that meets the standard recommended by the Tennessee Law Revision Com-

mission, § 40–906(b), proposed final draft November, 1973, quoted hereinafter.

law since 1858, now requires the elimination of hearsay evidence as a basis for finding probable cause. Yet that statutory phrase, blended with *Myers v. Commonwealth, supra, Maestas v. District Court, supra, McKeldin v. State, supra,* and *Hale v. State, supra,* has produced what is to me an unwarranted result, futile and meaningless to its intended beneficiaries, disruptive of the prosecutorial process and potentially oppressive to the victims of crime.

Seemingly persuasive and relevant quotes from *Myers v. Commonwealth, supra,* have been urged upon us in the briefs on behalf of Waugh and his common cause amicus curiae, the Shelby County Public Defender's Office.

The factual situation in *Myers* was different than in the instant case. The defendant was charged with rape, assault with a dangerous weapon, and breaking and entering. At the probable cause hearing, the only witness presented by the prosecution was the victim. After the direct examination was completed, defense counsel began his cross-examination by asking the victim about her belief in witchcraft, whereupon the magistrate announced that he had heard enough to find probable cause. Defendant insisted upon completing his cross-examination, and informed the court that he was prepared to present evidence of a psychiatric examination revealing a neurosis that affected the veracity of the victim's statements, hospital tests performed the morning after the alleged rape, and other evidence supporting his defense of a consensual sexual relationship. The magistrate denied his request and terminated the hearing. Thus the question presented was, as expressed by the Massachusetts court, "whether the judge's finding of probable cause before the petitioner had an opportunity to complete cross-examination of the complaining witness and to present relevant testimony and witnesses in his own behalf violated the petitioner's 'substantive rights.' " 298 N.E.2d at 821–22.

Neither the admissibility of hearsay evidence nor the necessity for legally admissible evidence to support a probable cause finding was in issue in *Myers.* I agree that it would be erroneous and unthinkable that a Tennessee magistrate would refuse to allow a defendant to present affirmative defenses at a preliminary hearing or to cross-examine such witnesses as the prosecution elects to present. It would unnecessarily prolong this opinion to analyze in detail the differences between the Massachusetts statutes and ours with respect to preliminary hearings and grand jury proceedings. Suffice it to say there are significant differences.

After examining the Massachusetts statutes, the *Myers* court concluded that the "preliminary hearing's primary function is to screen out at this early but critical stage of the criminal process *those cases that should not go to trial* . . . ." (Emphasis added.) 298 N.E.2d at 822. That is not the primary function of the preliminary hearing in Tennessee. The only purpose of a Tennessee preliminary hearing is to determine whether there is probable cause to believe the accused committed the offense charged and to fix the amount of bail in bailable offenses. *State v. D'Anna, supra; State v. Hudson,* 487 S.W.2d 672 (Tenn. Crim.App.1972). As previously stated, it is the grand jury, not the magistrate, that makes the final determination of who is to be held for trial.

Historically, Tennessee has relied upon the grand jury as the impartial body to stand between the prosecutor and the citizen, protecting him or her from being put to trial on groundless charges. Whether or not every grand jury performs that function in every case is not an issue before this Court. One of the amicus curiae briefs has attempted to put before us facts about the action of Shelby County grand juries in general, and specifically actions of the Shelby County grand jury on a particular day in September, 1977, when it is surmised that "assembly-line justice" was dispensed. Such facts could only be presented to us in a bill of exceptions and it is a gross impropriety that they should be urged upon us in an amicus curiae brief. Those facts, if true to the extent that magistrates should be

given the power to make the final decision on probable cause to go to trial on the merits of charges, are policy matters that address themselves to constitutional and legislative reform. They are beyond the power of this Court to adjudicate in the present state of the Tennessee Constitution, statutory law and judicial decisions.

I acknowledge the accuracy of the majority's statement that the Tennessee preliminary hearing also serves to determine whether there is evidence sufficient to justify the *continued detention* of the defendant pending the action of the grand jury. I agree that defendant is entitled to cross-examine and to present witnesses to establish that charges are unfounded. It seems significant to observe here that, in those cases where the charges may be unfounded, the prosecution's decision to limit the number of witnesses and scope of its proof would increase the defendant's chances of being at least temporarily released on a finding of no probable cause and perhaps the defendant might demonstrate to the district attorney that further prosecution was not warranted. A demand for confrontation of all witnesses as was made in this case is both legally and practically untenable. As a practical matter, the expectation of overcoming the prosecution's evidence by cross-examination alone, and thereby gaining release and convincing the district attorney that the charges are unfounded, is little short of a flight of fantasy. The true reason for the hard push to require the prosecution to produce all of its witnesses is for the purpose of discovery. It is noteworthy that this defendant's first action at the preliminary hearing was a demand that the State be compelled to produce all of the witnesses. Since this Court handed down the decision in *McKeldin*, it seems that "every lawyer worth his salt" has attempted that tactic.

As precedent, in my view, *McKeldin* stands for the principle that the Tennessee preliminary hearing is a "pretrial type of arraignment where certain rights *may* be sacrificed or lost." (Emphasis added.) 516 S.W.2d at 85. Factually, a constructive fraud had been practiced on *McKeldin* by providing him with an impostor posing as a lawyer. We held that the Sixth Amendment to the United States Constitution requires that an indigent defendant have the guiding hand of counsel at a preliminary hearing. We did not have before us any semblance of an issue involving the scope of a preliminary hearing, its function as a discovery device, the admissibility of hearsay evidence, or the quality or quantity of evidence upon which to base a finding of probable cause. In my opinion, our "critical stage" holding in *McKeldin* was based more upon what *might* happen at a preliminary hearing than what *must* happen there. Parenthetically, we have the unique situation in Tennessee that the complete denial of a preliminary hearing does not violate a defendant's constitutional rights, but the failure to provide an indigent defendant with counsel at a preliminary hearing does violate his constitutional rights. See *McKeldin v. State, supra.*

A defendant without the guiding hand of counsel might waive important constitutional rights under the Fourth, Fifth and Sixth Amendments, and might not be effective in cross-examination of prosecution witnesses or in the presentation of a defense. Perhaps the most critical of all decisions for a defendant at a preliminary hearing is whether or not to present any affirmative evidence of innocence lest the hearing be turned into a discovery device for the prosecution.

With respect to discovery, *McKeldin's* observations must be classified as dicta. While it may have been relevant to note that a defendant should have a lawyer who would exploit such opportunities as may be available at a preliminary hearing, the additional comment that failure to "learn the precise details of the prosecution's case" or failure to engage in a "fishing expedition" were unfortunate, and have erroneously, in my view, led defense counsel to perceive those strategic objectives as vested rights at a preliminary hearing. My brethren have expanded *McKeldin* in that direction today. I regard that expansion as an unwarranted interpretation of the case and, for my part, totally reject it.

The majority relies upon *Hale v. State, supra.* I do not regard *Hale* as having any precedential value whatever. The first sentence of the *Hale* order dismisses the case for mootness. All that is said thereafter is *obiter dictum* and is not binding on the Court under the doctrine of *stare decisis.* Only the points in judgment arising in a particular case before the Court are precedents for future decisions. *Shousha v. Matthews Drivurself Service, Inc.,* 210 Tenn. 384, 358 S.W.2d 471 (1962); *State, ex rel. Pitts v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151 (1912). The statement in *Hale* that "the usual rules of evidence are applicable to preliminary hearings" is *ipsi dixit.* 548 S.W.2d at 878.

There is not a word in the preliminary hearing statutes that can be relied upon to support that statement. The only appellate court opinion that has directly considered the question of whether hearsay evidence may support a probable cause finding at a preliminary hearing is *Gammon v. State,* 506 S.W.2d 188 (Tenn.Crim.App.1973). While it is not clear from the opinion whether the magistrate's finding of probable cause was based wholly on hearsay or only partly, it is clear that the decision sanctions the use of hearsay to establish probable cause. The Court of Criminal Appeals pointed out that, regardless of the outcome of the preliminary hearing, the grand jury could indict defendant upon hearsay evidence, citing *Parton v. State,* 2 Tenn.Crim.App. 626, 455 S.W.2d 645 (1970).

The majority also places reliance upon the Colorado case of *Maestas v. District Court, supra.* First, the Colorado court reiterated the prevailing rule in that state that the preliminary hearing is not a mini-trial and the rules of evidence may be tempered in accordance with the sound discretion of the magistrate, and that "[h]earsay evidence, and other evidence, which would be incompetent if offered at the time of trial, may well be the bulk of the evidence at the preliminary hearing," citing *Kuypers v. District Court of Colorado,* 188 Colo. 332, 534 P.2d 1204 (1975), and *People v. Quinn,* 183 Colo. 245, 516 P.2d 420 (1973). 541 P.2d at 891.

However, the Court said that where, as in the instant case, the prosecution uses secondhand hearsay as the sole basis for probable cause,

"the historical function of the preliminary hearing is vitiated—that being to place before the judge evidence which establishes that probable cause exists to prove that the defendant did commit the crime charged. *Cf. United States v. Umans,* 368 F.2d 725 (2d Cir. 1966), *cert. granted,* 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872 (1967), but *dismissed* as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967). By our holding here, we seek fair play and substantial justice at the preliminary hearing." 541 P.2d at 892.

Immediately following the above quote, the Colorado court reaffirmed its prior holding in *People v. Quinn, supra,* that hearsay evidence is admissible at a preliminary hearing,

"but we admonish the courts to beware of the excessive use of hearsay in the presentation of government cases. The inordinate use of hearsay, as in the present case, foils the protective defense against unwarranted prosecutions that preliminary hearings are designed to afford to the innocent. *Cf. United States v. Umans,* 368 F.2d 725 (2d Cir. 1966)." 541 P.2d at 892.

Parenthetically, it is significant to note that *Umans* and three other cases from the Second Circuit Court of Appeals relied upon by the Colorado Court factually involved approved grand jury proceedings, not disapproved preliminary hearing proceedings.

Although *Quinn* was reaffirmed, it was also modified by the following admonition.

"We do not require that the prosecution produce all, or even the best, witnesses at a preliminary hearing. But the evidence presented at the preliminary hearing must have some semblance of a factual foundation and must show probable cause. (citation omitted.) The process is best served when at least one witness is called whose direct perception of the

criminal episode is subject to evaluation by the judge at the preliminary hearing. Establishing probable cause on the basis of hearsay alone should only be resorted to when the testimony of a perceiving witness is unavailable or when 'it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge.' (citations omitted.)" 541 P.2d at 892.

In *Parton v. State, supra,* our Court of Criminal Appeals, speaking through presiding Judge Walker, expressed a somewhat similar admonition in deploring the grand jury indictment of Parton by the sole testimony of an assistant district attorney testifying from notes taken of the testimony of witnesses who appeared before a prior grand jury that returned a no true bill.

"Although we think that the grand jury should require the production of the most satisfactory and convincing evidence which the case permits, we hold that an indictment may not be abated because it is founded on hearsay evidence. The legality and sufficiency of evidence heard by the grand jury is not subject to review by this court.

"A wide range must necessarily be given to investigations by a grand jury and it is not limited to the consideration of that which would be admissible on the trial of the cause. We do not encourage prosecutors and grand juries, however, to rely on hearsay testimony when direct testimony is available or when it is not demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge. The grand jury may, in respect to all offenses, send for witnesses and make investigation when they, or any one of them, suspect a law violation. Excessive use of hearsay in the presentation of cases to grand juries tends to destroy the historical function of grand juries in the protection of the innocent from unwarranted prosecution." 455 S.W.2d at 648.

The Court of Criminal Appeals relied upon *Burton v. State,* 214 Tenn. 9, 377 S.W.2d 900 (1964), for its holding that an indictment may not be abated although founded on hearsay evidence. In *Burton,* this Court relied on *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), which continues to be the controlling law with regard to indictments based upon hearsay evidence.

In *Costello,* Mr. Justice Black had this to say with respect to grand jury indictments based on hearsay:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment." 76 S.Ct. at 408–409.

Those same observations may validly be made with respect to the preliminary hearing challenge presented in this case.

It is worthy of mention that in the federal criminal justice system, where substantially all of the new precedents expanding defendant's rights and remedies have originated, a finding of probable cause at the preliminary examination before a magistrate "may be based upon hearsay evidence in whole or in part." Fed.R.Crim.P. 5.1(a). Relevant excerpts from the Committee Notes to Rule 5.1 follow:

"A grand jury indictment may properly be based upon hearsay evidence. (Citing *Costello v. United States, supra.*) This being so, there is practical advantage in making the evidentiary requirements for the preliminary examination as flexible as they are for the grand jury.

.    .    .    .    .

"It has been urged that the rules of evidence at the preliminary examination should be those applicable at the trial because the purpose of the preliminary examination should be, not to review the propriety of the arrest or prior detention, but rather to determine whether there is

evidence sufficient to justify subjecting the defendant to the expense and inconvenience of trial. (citations omitted.) The rule rejects this view for reasons largely of administrative necessity and the efficient administration of justice. The Congress has decided that a preliminary examination shall not be required when there is a grand jury indictment (18 U.S.C. § 3060). Increasing the procedural and evidentiary requirements applicable to the preliminary examination will therefore add to the administrative pressure to avoid the preliminary examination." 8 Moore's Federal Practice ¶ 5.1.-01[2], at 5.1–3—5.1–4 (2d ed. 1977).

Thus the federal system has rejected the legally admissible evidence standard at preliminary hearings and authorized hearsay in whole or part because of the practical advantage of having the same rules of evidence applicable to the preliminary hearing that are applicable to the later grand jury proceedings, and for reasons of "administrative necessity."

Increasing evidentiary requirements at a preliminary hearing and providing an avenue of appeal therefrom will undoubtedly impose substantial additional burdens upon our overloaded criminal justice system. Federal magistrates are in a better position to absorb the impact of turning a preliminary hearing into a mini-trial than are the magistrates in Tennessee.

In my view, neither the statutes nor the case law requires a different rule in Tennessee. It is clearly meaningless (except for discovery objectives, not a legally sanctioned purpose of a preliminary hearing) to a defendant to impose stringent evidentiary rules at a preliminary hearing when probable cause may be established wholly on hearsay at a subsequent grand jury proceeding.

On January 26, 1976, I concurred in recommending the Proposed Rules of Criminal Procedure to the Legislature. Rule 5.1 of the proposed rules provides that probable cause, "shall be based upon evidence which may not be inadmissible hearsay except documentary proof of ownership and writ-ten reports of expert witnesses." Based upon my intervening research and observations in this case, *Hale,* and a number of other cases presented to me and other members of this Court and the Court of Criminal Appeals, I now entertain grave doubts with respect to the wisdom of the above-quoted portion of the rule. However, I see a substantial difference between this Court's departing by judicial decision from long-standing precedent and imposing a new standard of proof for the preliminary hearing, a creature of statute, and joint action by this Court and the Legislature in adopting Rule 5.1 as a part of comprehensive rules that include mutual discovery rights of defendants and the State outside of a preliminary hearing, plus restraining committee comment with respect to preliminary hearings.

The Law Revision Commission's recommendation may well be the better rule. It is as follows:

"The finding that an offense has been committed and that there is probable cause to believe that the defendant committed it shall be based upon evidence, which may be hearsay in whole or in part, if there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Tenn.L.Rev'n.Comm'n., Tenn.Code Crim. Proc. § 40–906(b) (Prop. Final Draft, Nov. 1973).

I am also persuaded that the Colorado rule, allowing hearsay plus one perceiving witness, if available, would be preferable to the present proposed Rule 5.1.

## II.

The majority implicitly admits there is no authority or precedent for a review of the magistrate's action by criminal court judges upon mere motion of the defendant. The majority opinion says that the "whole tenor and implication of our criminal code" places a defendant and his case under the jurisdiction of the State Criminal Courts, apparently from the moment of arrest. The statutes

cited are addressed to the magistrate and all save one are codified in Chapter 11, and deal with the commitment of the defendant (§ 40–1117), the form of the commitment (§ 40–1118), bail (§ 40–1119), binding material witnesses (§ 40–1122), and the form of the bond of witnesses (§ 40–1123). The last two statutes cited in Chapter 11 instruct the magistrate to return all the documents in the case to the State court where the defendant and the witnesses are bound to appear, and provides a penalty for failure to do so. Tenn.Code Ann. §§ 40–1128, 40–1129. Tennessee Code Annotated § 40–1707 instructs the grand jury what to endorse on an indictment in which they do not concur.

I do not agree that any of those statutes, or their "whole tenor or implication" supports the holding that "the circuit or criminal court thus acquiring jurisdiction of the case and the person of the defendant pursuant to the magistrate's commitment has jurisdiction to consider and determine a motion to dismiss the commitment order, as was done in this case."

The simple fact is that neither our Constitution nor our statutes provide any appellate review of any kind or character of the non-final action of a magistrate at a preliminary hearing, and this Court is totally lacking in authority to confer appellate jurisdiction on ourselves or any other court. *McKeldin* came through the appellate process in the usual way; after conviction in the trial court, defendant appealed asserting as one of several errors the denial of a constitutional right that allegedly was prejudicial.

The tragedy of the majority's unprecedented action, to me, is the practical futility of it as clearly demonstrated by the result in the case at bar. Waugh must now face a trial on the merits, because it was impracticable for him to obtain action on his plea in abatement within the thirty-day limitation of Tennessee Code Annotated § 40–1131, although his plea was promptly filed. That is a fate that will befall many defendants who seek to avail themselves of this Court's new largess. Those who beat the time limitation of Tennessee Code Annotated § 40–

1131 and obtain a favorable review of adverse treatment by a magistrate must still await the action of a grand jury for the final determination of probable cause to go to trial.

I would affirm the judgment of the Court of Criminal Appeals for the reasons stated herein.