Catron, Ch. J.
The only question in this cause arises upon the charge of the circuit court to the jury, as follows: “In the first place, the law presumed the defendant innocent, and that presumption stood until the fact of hilling was clearly made out by proof; and if they entertained a reasonable doubt as to the fact of killing by the defendant, they should acquit him. But if the fact of killing by the defendant be proved, the law presumed him guilty of murder, unless the proof' clearly and satisfactorily showed the offence was one of less magnitude; and therefore if they entertained doubts: under the testimony, whether the act amounted to murder or manslaughter, they were bound to find the defendant guilty of murder, as it lay upon the defendant to show clearly and beyond a reasonable doubt, that the offence was not murder, but manslaughter, unless it appeared otherwise in the testimony of the State.” The opinion expressed in this charge adopts that previously expressed by Judge Stuart in the causes of the State vs. *284 Short, at February term 1831, and the State against Ridley, at August term 1831, at Williamson. Judges Stuart and Kennedy, are gentlemen of decided talent, accurate and extensive information on the criminal law, and great experience. Furthermore, circuit court judges are much more familiar with the criminal code, than judges of this bench, and therefore I feel it a most weighty duty to reverse these judgments, and nothing but a thorough conviction that these charges to the juries were not warranted by the well settled course of practice of ihe criminal law in Tennessee, for something like twenty years within my recollection and experience, could induce me to doit. In the two capital cases especially, I do it with great regret. The causes coming up from Williamson involve no question of fact save as to the malicious intent with which Short slew Newsom, and with which Ridley put out the eye of Martin. The evidence in Coffee’s case, is not set out; we will take it that the fact of killing, was not a matter of controversy, as it rarely is. This is not the main allegation in a capital indictment for wilful murder, which alleges that C did wickedly, wilfully, and of his malice aforethought, kill and murder.
The defendant is charged with the fact of killing, and the intent with which i.t was done, and the fact and intent must concur to constitute the crime, and why is this so? Before the statute of 23 Henry VIII, the intent need not have been alleged; either offence was equally clergyable; but that statute provided, that a person convicted in due form of law, for any wilful murder of malice prepense, shall suffer death without the benefit of clergy. The fact and intent are charged by the State, and must be proved to the conviction of the jury. The issue is life or death. So the people at large, so the jurors, so the lawyers, and so the courts, feel and understand it. I purpose to speak of this, the highest exercise of the power of government, as a judge of Tenues- *285 see, and of the administration of the criminal law as practised in this State under the 9th section and 11th article of our constitution.
It virtue of this, the accused has the same right to introduce evidence in his defence, that the State has to produce proof to sustain the indictment. This is a right the prisoner did not have' in England at the time when the authorities compiled by Foster and others were adjudged; the proof for the crown was one thing; that of the prisoner another. Hence the theory of proof and disproof, has been extracted from the earlier English au--thorities. The argument is, that the issue was tried like one on a bond, where the indebtedness is proved, and;: the proof of payment rests upon, and must clearly and beyond doubt be proved by the defendant. The fact of killing being proved, malice is presumed to have influenced the commission of it. To rebut this presumption, the defendant must disprove it, beyond doubt, and if there be doubt, the presumption stands. Let us test this charge, not by theory, but by our own practice. It it must be borne in mind, that plain men, not lawyers, are the judges in such .cases'. The power of taking life is vested in the great body of jurors; a power if vested in a particular tribunal, would make such tribunal more powerful than is consistent with self-government, and republican institutions. The jury is empannelled and sworn to try the issue, guilty or not guilty. The State then proceeds to prove the facts alleged. Two things are charged: 1. That he inflicted it, wilfully, wickedly, and of his malice aforethought. The fact of killing being proved, the malicious motive is inferred from the fact of killing. Human motive can only be inferred from facts proved, but the inference or presumption is evidenced to the mind, and nothing more; it stands on the foot of a proof, (2 Stark. Ev. 1245,) subject to be done away.
The distinctions between malice expressed, and malice implied, will be disregarded, as the more likely to *286 confuse than to elucidate. Malice must be inferred from facts proved in every case; the wickedness of the human heart or mind, cannot be learned in any other way. No better evidence can be furnished of a wicked, depraved and malicious heart, than the killing a fellow creature without good provocation. The indictment first tells us, the motive with which the act was done, to wit, that it was done wilfully, wickedly, and of malice aforethought. The fact and the motives must be found by the jury, because they must find the defendant guilty in manner and form as charged in the indictment. The jury must be of one mind; and their mind must be convinced, fairly, honestly and impartially convinced, that the defendant did kill, and that he killed wilfully, wickedly, and with malice. But suppose they are not convinced that it is their duty to find the defendant not guilty.— This is what is meant by “a reasonable doubt”' — an awkward and vague expression, calculated to cover but too often the corrupt verdict of a juror packed on the State by the defendant, and what is almost as bad, calculated to ease the conscience of an honest but weak hearted juror, who is convinced of the guilt of the defendant, yet is willing to violate his oath to quiet his sympathy.
The abuse of this lóose expression, has produced file departure from the settled law of homicide, I have no doubt. It is hoped it will be dropped by the circuit courts, and the juries in its stead be told, that from all the evidence taken together, and taken in connexion with the law as laid down by the court, the jury must be honestly, and fairly, and impartially convinced, that the defendant is guilty as charged in the indictment, before they can give in a verdict of guilty. On the other hand, if they are not convinced of his guilt, they must return a verdict of not guilty.
But to come to this conclusion, what evidence is the mind to ground its conviction upon? The answer is, *287 the whole evidence in the cause, that given for the State,' and that given for the defendant, the presumptions for either side standing as evidence, to be weighed, and compared with the whole body of proof of every description, heard on the trial, and this taken in connexion with law bearing upon it, as delivered by the charge of the court. If from this whole body of evidence, they are convinced of the killing, but are not convinced that it was done with malice, they ought not to find the defendant guilty of murder.
This I hold to be the plain, and I had thought, the undoubted law. Has it been violated by the foregoing charge 1 That it has, is to my mind manifest. The ju. ry were in effect told, that if they found the killing^ that which no one denied, the malice was presumed, and that they should find the defendant guilty. Suppose they had returned a special verdict, that they found the defendant slew the deceased as laid in the indictment; but of the fact, that he slew him with malice, they were not convinced: could the court lawfully have pronounced judgment of death upon this finding? I think clearly not. Yet the reverse of this is the plain consequence of the charge.
At the request of my brother judges, because of the great magnitude of principle involved, I have reduced to writing the result of my investigations in these causes; and although there has been little time for writing, yet the subject has been carefully and strictly examined, with all the means of information that could have been desired, and the conclusion is above stated.
Green, J.
Presumptions only arise where there is an absence of proof. In homicides, when the fact of killing with its attendant circumstances is proved clearly and satisfactorily, so that the proof either shows express malice, or that there was no malice at all, there is nothing to be presumed either the one way or the other; but *288 in cases where the killing may be proved and no accompa-Hying circumstances appear in the evidence, the law presumes that the killing was done maliciously. So where the killing is proved, and the circumstances attending it are shown, though no express malice may appear from the proof, it may be presumed from some attending fact, as if a deadly weapon were used, the law presumes malice. So if there be circumstances of cruelty and barbarity, showing a heart regardless of social duty and fatally bent on mischief, the law presumes malice. These presumptions of law amount to full proof of the fact. They encounter opposing testimony with all the weight and authority of such proof; and they give way to the force of opposing testimony, as proof would yield to opposing evidence. “Where the law raises a presumption in favor of the fact, the contrary must be fully proved, or at least such facts must be proved as are sufficient to raise a contrary and stronger presumption.” 1 Starkie, 452.
These presumptions being only prima facie evidence of the fact, yield to the influence of opposing proof; as if one kill another, the presumption of law is, that he did it maliciously; but he may show in proof that he was grievously provoked by the deceased, whereby he was greatly enraged, and in the fury of his passions the killing was perpetrated. Here the presumption of malice is rebutted by proof of the provocation. 1 East, 224. The amount of proof necessary to rebut the presumption of malice, where “the onus of exculpation is thrown upon the defendant,” is no greater than would be required where it arises out of the testimony introduced against him. In connection with the fact of killing, the presumption of malice, we have seen, will arise. To rebut this presumption, the defendant need only prove that he was greatly provoked. And it would require proof of an equally grievous provocation to extenuate the of-fence to manslaughter, had the proof of such provoca *289 tion accompanied the proof of the killing, and arisen out oí the evidence on the part of the prosecution.
There are greater and less degrees of provocation to which a man may be subjected, such for instance as the infliction of a blow, or only application to the party of abusive epithets; and although one man of captious and fretful temper might possibly have his passions excited to a higher degree by abusive language, than another of calm and mild disposition would by the infliction of a blow, yet the law would not extenuate a killing to manslaughter, under the plea of such excitement, because it would be upon, too slight a provocation; therefore the question whether the provocation be sufficient, and whether its influence on the passions of the' party provoked were excited to fury, must often become matter of great difficulty to determine satisfactorily. If there be doubt as to the sufficiency of such provocation, and the fury consequent on it, there must exist a corresponding doubt whether the killing was done maliciously. Again, the killing may be proved so as to raise the presumption of malice; to rebut this presumption, the defendant offers testimony to prove that he had no intention to kill.—The evidence may tend strongly to establish the want of intention, but still leave the mind in doubt as to the existence or non-existence of such intention, and necessarily produce a doubt as to the malice. “Where any doubt arises whether the party acted maliciously, or with such a fair and bona fide intention as would in law protect him, or whether the particular injury resulted from mere accident, it seems to be a pure question of fact for the consideration of the jury, who are to decide whether the act was intentional, and if so, by what motive the agent was really actuated.” 2 Stark. 296. The courts in England have often doubted as to the existence of malice, in cases where the malice was clearly proved. 1 East, 236. From the very nature of such transactions the existence or non-existence of the fact of malice will *290 much more frequently be matter of doubt, than the killing. The evidence of both these facts is necessary in order to constitute murder. The jury ought always to be satisfied that the party is guilty of murder, before they pronounce him so. But it is impossible for them to be satisfied he is thus guilty, when they have strong doubts as to the existence of malice. There is no reason in saying that a jury must acquit upon a doubt as to the fact of killing, and yet upon a stronger doubt as to the equally important fact of malice, they must convict.
In judicial investigations we scarcely arrive at certainty. A strong persuasion of a fact is all that in most cases we can expect. With this the mind is satisfied-. But we are compelled sometimes to act upon evidence less persuasive, so that a satisfactory conclusion, either the one way or the other, cannot be obtained. It is admitted that if this state of the mind exist as to the fact of killing, an acquittal must follow. But not so as it relates to the malice. And why? Because we are told there is a legal presumption to afford the mind a resting place In answer to that proposition, it has already been shown that this legal presumption, which was prima, facie evidence of the fact, has been opposed by evidence, so weakening its force, as no longer to be satisfactory proof; and consequently a doubt as to the fact thus presumed, must now exist. I have shown that as to this question, it isa matter of no consequence whether the onus be upon the government or the accused; no matter from which the evidence comes; that evidence, taken all together, ought in all cases to produce the same result. Therefore, if upon the whole evidence, the proof of killing and the exculpatory evidence taken together, the jury are unable to decide whether the case be murder or manslaughter, they ought to find the defendant guilty of the less offence only. M’Nally, 635.
It is well said, (1 Starkie, 451) “that in all criminal *291 cases whatsoever, it is essential to a verdict of condemnation that the guilt of the accused should be fully proved. Neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate the full belief of the fact to the exclusion of all reasonable doubt. In a charge for murder, the “guilt” to be established is not the killing only, but the killing with malice aforethought. I hold therefore, that to warrant a verdict of guilty for murder, the whole evidence taken together, must generate full belief of the guilt of the party, as consisting in the killing with malice. As if A kill B, and that fact alone being established by the State, the malice is presumed, and the onus of exculpation is upon the defendant. He proves that the killing was upon a sudden fight, and a sufficient provocation, which throws back the onus to the state.— Proof is now introduced to show that A had previous malice against B, and that he brought on the fight with a design to kill, of this previous malice. Suppose this latter evidence fail of satisfying the minds of the jury as to the existence of such previous malice — clearly, upon such doubt they ought to acquit. Now if upon the introduction of A’s evidence, exactly the same state of the mind should be produced, surely the same result ought to follow. Whether, therefore, the doubt exist, as to the killing for the want of full proof, or as to the veracity of witnesses by whom it may have been proved, or as to .the evidence of malice in the perpetrator, it results in the same thing, that is, a doubt whether the accused be guilty of the crime of murder.
It would be unreasonable, however, to assume, that because by possibility a defendant may not be guilty, that therefore he is to be acquitted. Such possibility could scarcely ever be excluded. The true rule is, that the testimony must be such as to generate full belief of the guilt, or in other words, the jury must be satisfied of *292 the guilt before they will be authorized to find a verdict . ° . oí condemnation.
I am therefore of opinion, that the circuit court erred in telling the jury, that “if they entertained doubts under the testimony, whether the act amounted to murder or manslaughter, they were bound to find the defendant guilty of murder.” The judge should have told the jury, that if upon the whole circumstances of the case, they were satisfied of his guilt, they ought to find him guilty; but if their minds, taking all the evidence together, could not come to any satisfactory conclusion as to whether the act amounted to murder or manslaughter, they ought to find him guilty of manslaughter only.
Peck, J.
The prisoner’s guilt or innocence of the murder charged, depended upon disposition of heart at the time the act was perpetrated. If there was express malice, the offence was murder. If malice was to be implied from the fact of his having taken life, and the state in the proof brought against him, had shown nothing which mitigated the offence, or removed the implication of law, then the prisoner might by evidence (if the fact was so) remove the implication of law, and do away the inference of malice.
What degree of evidence might make weight wdth the jury, so as to change their conclusion and reduce the crime from a higher to a lower degree of guilt in the prisoner, was not for the court. The judge dare not weigh the evidence for the jury. The rule of law touching its admission, and its legal application to the case when admitted, is all the assistance a jury has a right to expect from the court. An intimation by the court touching its effect upon the cause, if it can be inferred from the charge, might cause suspicions of the verdict, and ought to weaken the judgment founded upon it.
I am sensible there is something in the manner of a judge in delivering a charge, "which may be seen, and *293 weigh much, but it cannot be reached by a revising tribunal. A judge subject to the influence of feelings common to the rest of mankind, shocked at an outrage committed, may show the direction of his feelings without being sensible of it; or, in his frailties, think he is leaning to virtue’s side: but in this country, and at this day, it is almost useless to say, of alL men he should be the last to exhibit such seeming bias.
When the degree of guilt is made out as against the prisoner by the state, he may rebut it. If the state rests the malice upon the presumption of law from the fact of having slain the deceased, the prisoner may by circumstances show the want of malice; for it is a rule of law, that circumstantial evidence may be rebutted and overturned by circumstances. No one will pretend that the prisoner is to be jeopardized by evidence of a grade that would not on the other hand be effectual to save him from the imputation of a deeper shade of guilt. Besides other facts, he might be at liberty to prove a general want of a wicked and malicious spirit; that he was mild, humane, and possessed of a temper and disposition at variance with that of the murderer. Such evidence being admissable, how shall the jury weigh it?
It is truly said in the books, that often this is the most difficult duty a jury has to perform; and it is on this part of his duty his discretion is appealed to — practical investigation into every thing proved. All the evidence must be taken as one whole, and if possible, be reconciled; if there be parts irreconcileable with the balance, it must be drawn out of view. But when this is done, the balance remains as the evidence of the case. The jury are not to take it in parcels; apply portions of it applicable to the guilt of the prisoner; and when the items - are collected, place them to his account, and then select the items for exculpation, weigh them in the scale and pronounce according to bare preponderance produced by such a process. This the law forbids. But the jury *294 are called upon to go further. In effect they are instructed to fix the prisoner’s guilt of malicious intention from the fact of slaying, and thus establish the guilt of the crime of murder; and then, in .examining into the evidence produced by the accused, “if the jury entertained doubts whether the act amounted to murder or manslaughter, they were bound to find him .guilty of murder:” and so as to his sanity.
In this charge of the judge the rule is reversed; for we are not to forget that the crime depending upon the state of the mind, all the circumstances of sudden heat, provocation and conflict, which might deprive the accused of that deliberate mind, the absence of which xeduces from the degree of murder to manslaughter—are in most cases the only matter in proof to be weighed by the jury.
If we are to take the evidence all together, as well that touching the guilt as the innocence of the prisoner, and on applying it to the crime charged, find a doubt as to the malicious intent, must not that doubt instantly apply itself to the quality and degree of the crime; and how, consistent with the rules of law, can that doubt operate but in favor of the prisoner as to the higher offence? The doubt may not acquit entirely from all crime, but the doubt of the jury directed to and resting entirely on the question of malice, the jury may not be content to destroy life if that doubt remains; but take this charge, and they are bound to do it, or disobey the injunction of the court. In short, the jury are to garble the evidence to establish the malicious intent; while the rule is, all the evidence considered, the fact must be clearly against the prisoner; and until it is so found, beyond a reasonable doubt, he is not guilty of murder. To find otherwise, is to find against evidence; for evidence “is that which elucidates and enables the mind to see truth.” While there is doubt, that elucidation is *295 wanting; and while in doubt, the mind has nothing to proceed upon.
One of the judges of this court, in a civil case of great difficulty, in striving to come to a conclusion with his associates on the propriety of reversing, had doubts arising upon the facts and law of the case, if he ought to do so, uses these expressions: “I am sorry to be compelled to close this matter between the parties under circumstances which make me much distrust the correctness of my own opinion; but thinking as I do,I cannot do other than say, that where I am not convinced, I will not act. I am not sure this judgment is wrong, and will not therefore reverse if.” Kellon vs. Bivens, Cook’s Rep. Every juror, when acting in his sphere, would desire the same privilege claimed by the judge on that occasion, of leaving things where he found them, if not convinced. The rule which supposes every man innocent until tile contraryis shown, is in accordance with the opinion we entertain. In short, the difficulty (if there is any about it) of investigating this subject, arises only from the novelty of it; for I am sensible of a single maxim with the profession, and the usages of the country from its settlement, would have been just as satisfactory as pages written to prove what it seems to me no lawyer ever doubted before.
In Ridley’s case, another point raised in argument, on the necessity of an averment, that the act amending the criminal laws of the state, became and was in force on the first of January 1831, before the commission of this offence, I have not deemed it important to notice in this opinion, as there must be a reversal on the principal ground assumed for the defendant.
Judgment reversed.