**James Raymond GAMMON, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Aug. 28, 1973.

Certiorari Denied by Supreme Court Jan. 7, 1974.

———◆———

James Tyre Havron, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., and Michael D. Noel, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

In two cases tried together, the jury found the defendant guilty of first degree murder of Joan Seiner and of Harriet Nicholson. In each case it fixed his punishment at 99 years in the penitentiary. From consecutive sentences, the defendant appeals in error.

On the morning of January 13, 1972, the bodies of Joan Seiner and Harriet Nicholson were found in a field and ditch near the Nashville airport. Joan had been stabbed about 32 times and bled to death. Her pantyhose had been tied around a leg and a cord was about her arm.

Harriet Nicholson had apparently been killed by blows to the head with the base of a bumper jack.

The two deceased had been together earlier in the evening at the Plantation Club where the defendant had danced with one of them. He had a number of drinks there and, by his statement to officers, he, at closing time (about 3:00 A.M.), got in Harriet's orange Nova automobile with them. Joan died soon after that time. By medical testimony, Harriet died some time later that morning. A male friend says she knocked on his apartment door about 3:00 A.M. but he declined to let her come in.

At about 6:00 A.M. the defendant returned to his apartment covered with blood. He obtained the aid of his roommate in cutting up his clothes and placing them in about five garbage receptacles. He also hid a pistol and had the roommate buy a coat like the one he destroyed.

The defendant told the roommate he had been in a fight at the Plantation Club. He was on parole and asked the help of the roommate in making an explanation to officers when they inquired.

On the defendant's request, the roommate falsely told officers that the defendant had been drunk and had called him from the Plantation Club and that he had brought the defendant home about 3:00 A.M. The roommate also falsely, at the defendant's suggestion, told that the defendant had fallen down the stairs in explanation of a cut on his eye and scratches on his legs. The roommate later told officers what had actually happened.

Harriet's automobile had been driven to a drive-in restaurant and left there. Her keys were kept on a chain with a Kennedy half-dollar. Two days later when the defendant learned officers were coming to interrogate him he promptly gave a similar key chain to his employer.

When the defendant was first interrogated, he told that he had been drunk at the Plantation Club and called his roommate to come for him; that he had hurt his eye as he went up the steps at home and that he received scratches on his neck from shaving. He was released at that time.

On January 15, 1972, he told officers he got in the orange car with the women; that they drove in the Murfreesboro Road area; that he recalled hitting the smaller (Harriet) but did not remember stabbing

the other; that he next remembers coming off a hill with his gun in hand; that he woke his roommate and tore up his clothing. At the same time, he said he killed the two girls.

On February 29 he directed officers over most of the route he and the women followed after leaving the Plantation Club. He said he was intoxicated and did not recall more than a scream and that he hit someone. He said he cut his eye by running off a bluff with his pistol in hand. This pistol was fired once and he undertook to hide it when he returned home. Neither of the women were shot.

The defendant did not testify. He offered testimony to the effect that he had subsequently broken into a home and had taken a key chain with a Kennedy half-dollar and that this one was similar to the one introduced into evidence. This was introduced to explain his possession of such a chain.

The evidence fully sustains the conviction and the assignments on the weight of the evidence are overruled. Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743.

■ The defendant attacks the conduct of the preliminary hearing, specifically urging that it was error for the general sessions court to admit hearsay testimony. He submits no authority on this question and we find it meritless. There was ample evidence to show probable cause to bind the defendant to the grand jury. That body could return an indictment regardless of the result of the preliminary hearing. We have held that an indictment may not be abated because it is founded on hearsay evidence. Parton v. State, 2 Tenn.Cr.App. 626, 455 S.W.2d 645.

■ The defendant challenges the admissibility of his confessions, particularly that a "hold" had been placed on him February 29 to prevent his release from jail. He was there on another charge. The record shows that his confidant, a Roman Catholic priest, had attempted to raise bail through professional bondsmen without success; that the defendant was unable to make bond and none of his rights were infringed. He was not illegally detained.

There is no claim of physical abuse. The officers called those he requested—the priest and the defendant's girl friend. His confession of January 15 was oral. The second was recorded on tape. The trial judge properly held them admissible and this assignment is overruled.

■ The defendant says two officers overheard the defendant make a statement against interest to his girl friend. He says the officers refused to talk to him about it. The girl friend testified in his behalf. Prospective witnesses are not partisans, and they should be regarded as spokesmen for the facts as they see them. Because they do not "belong" to either party, a prosecutor, defense counsel or anyone acting for either should not suggest to a witness that he not submit to an interview by opposing counsel. The trial court found that the district attorney general had not improperly obstructed an interview by the witnesses. We agree and also find no prejudice under the circumstances here. The assignment is overruled.

■ We find no error in the admission of evidence that the defendant's pistol was obtained in an encounter with one Belinda Donaldson and her uncle. On objection the court properly limited the testimony. See Campbell v. State, Tenn.Cr.App., 469 S.W.2d 506.

We have examined the argument and we do not think the prosecutor called attention to the fact that the defendant did not testify. We likewise do not find that the prosecutor's argument sought to shift the burden of proof to the defendant.

■ The defendant says the jury was made up of too many young people. There is no proof on this assignment and no authority is submitted. It is overruled.

We have considered the instructions and find them fair. The special request on confessions was properly denied. The photographs were not prejudicial and were properly admitted.

The court did not abuse his discretion in running the sentences consecutively.

■ The defendant contends that the court erred in denying his motion to dismiss the indictments. He relies on Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. By his reasoning our statute is void and there is no ascertainable standard for punishment. The defendant was not awarded the death penalty. By Bowen v. State, Tenn., 488 S.W.2d 373 (1972), our Supreme Court held that a judgment fixing the death penalty under this statute is only unconstitutional as to that portion of the judgment. The statute is constitutional as to these sentences. This assignment is without merit.

All assignments are overruled and the judgments are affirmed.

MITCHELL, J., concurs.

GALBREATH, Judge (dissenting).

I must respectfully dissent inasmuch as after a careful review of the record, I am convinced that the evidence does not sustain the convictions for first degree murder. Rather than set forth my reasons, I refer to those discussed elaborately in my dissenting opinions in Tooley v. State, 1 Tenn.Cr.App. 652, 448 S.W.2d 683, and Green v. State, 1 Tenn.Cr.App. 719, 450 S.W.2d 27, in which I reiterate the long standing principle laid down for us in numerous decisions of our Supreme Court that all murders, in the absence of proof of premeditation, are in the second degree. Witt v. State, 46 Tenn. 5.

The only evidence of how the victims were killed and the vital issue as to the state of mind of the killer at the time and immediately preceding the acts is found in the admissions he made to the police. Nothing in these statements afford any clue as to what motivated the terrible crimes nor the mental condition of the defendant. It is true that he went to elaborate lengths to conceal the crime, and this denotes a deliberate design to hide his guilt, but such strategems might understandably occur in an effort to cover up complicity in any crime. From the proof we are left with the plain fact that the defendant was very intoxicated and simply could not recall more than a scream and that he hit someone. If the jury disregarded the proof that he could not remember the killings, and accepted only his statement to the effect that he killed the two women as they had the right to do, we are left with nothing but the fact of the killings themselves and the subsequent efforts to avoid detection and the plain legal proposition that once the killing is established the law presumes second degree murder and the burden is on the defendant to adduce proof to lower the degree and on the State to prove circumstances so as to raise it. See Coffee v. State, 11 Tenn. 283; McClain v. State, 1 Tenn.Cr.App. 499, 445 S.W.2d 942.