IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JULY 1996 SESSION

FILED

February 10, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9511-CC-00393 |
| | ) | |
| Appellee | ) | |
| | ) | MACON COUNTY |
| V. | ) | |
| | ) | HON. J. O. BOND, |
| JUDY C. LEATH, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a Child; Aggravated Sexual ) |
| | ) | Battery; Child Abuse) |
| | ) | |

For the Appellant:

B.F. (Jack) Lowery
Lowery Building
Public Square
Lebanon, TN 37087

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Michael J. Fahey, II
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493


Tom P. Thompson, Jr.
District Attorney General

John D. Wooten, Jr.
Assistant District Attorney
203 Greentop Street
Hartsville, TN 37074


OPINION FILED: _____


REVERSED AND REMANDED


William M. Barker, Judge

**OPINION**

The appellant, Judy C. Leath, appeals as of right her convictions in the Macon County Circuit Court of two counts of rape of a child, two counts of aggravated sexual battery and two counts of child abuse. Appellant's convictions were based upon jury verdicts finding her criminally responsible for the actions of her husband. She was sentenced to twenty (20) years for each count of rape of a child, ten (10) years for each count of aggravated sexual battery, and eleven (11) months, twenty-nine (29) days for the misdemeanor child abuse convictions. The felony sentences were ordered to run consecutively for an effective sentence of sixty (60) years.

Appellant raises ten issues on appeal. She argues that:

(1) the trial court erred by failing to dismiss the indictment because it was vague and ambiguous, and in the alternative, by not requiring the State to provide appellant with a bill of particulars;

(2) the evidence was insufficient to sustain the jury's verdicts;

(3) the trial court erred in overruling appellant's motion for judgment of acquittal at the close of the State's proof;

(4) the trial court erred in refusing to order that appellant's attorney be allowed to communicate with the victim in preparation for trial;

(5) the trial court erred in admitting into evidence prejudicial photographs which were of no probative value and which were beyond the scope of the indictment;

(6) the trial court erred in overruling appellant's motion to suppress the introduction of a video tape recorded in the jail's booking room by a news reporter;

(7) appellant was denied a fair trial because the trial court failed to order the State to provide exculpatory evidence and because the State failed to provide her with exculpatory evidence;

(8) the jury charge violated appellant's constitutional right to due process of law;

(9) the trial was unfair, prejudicial, and biased in favor of
the State and the trial judge erred by not recusing himself;
and

(10) the trial court failed to properly sentence appellant.

We have reviewed the record on appeal, the briefs of the parties, and the law applicable to the case, and finding reversible error, we reverse appellant's convictions and remand this case for a new trial.

## I. FACTUAL BACKGROUND

In the late spring and early summer of 1993, six-year-old D.L.[1] was completing her kindergarten year. She had a brother who was two and a half years old and they both lived with their parents in Lafayette, Tennessee. Sometime in July, after school was out for the summer, the Macon County Sheriff received information about potential sexual abuse in D.L.'s home. After a thorough investigation, D.L.'s biological parents were arrested and later indicted for sexual abuse of D.L. They were tried separately and D.L. testified at both trials.

At appellant's trial, D.L.'s testimony revealed that she lived in a sexually abusive environment. She testified that her mother, the appellant, and father often walked around the house, and sometimes even ate meals, without wearing clothes. On other occasions, D.L.'s father would dress up in women's clothes, usually a skirt and high heels. D.L. also explained that it was common for her parents to have sexual intercourse without closing the bedroom door. During those occasions, D.L.'s parents not only allowed D.L. to watch, they also talked to her and even asked her to assist by getting her mother tissue to be used for clean-up. D.L. testified that "it [intercourse] looked like fun." On at least one occasion, the family gathered in the bathroom where D.L.'s father shaved her mother's "private part." D.L. also stated that her parents had

---

[1] It is the policy of this Court to refer to minor victims of sexual abuse by their initials only. State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

taken nude photographs of her, two of which were introduced at trial. They depicted D.L. in an obscene pose, similar to that of her mother in another picture.

The parade of horribles escalated as D.L. testified. She recounted her father's numerous attempts to vaginally penetrate her with his penis. These activities occurred in D.L.'s bed, on the floor in her bedroom, or in her parents' bed. D.L. also described one instance when her father's penis penetrated her. She stated that she never told appellant about this incident. However, D.L. informed appellant about the other numerous occasions and told her that it was painful. Appellant responded by instructing D.L. to tell her father not to do that.

D.L. also disclosed how she often slept in her parents' bed because she was afraid to sleep alone. She testified that on one particular night her father had no clothes on and that she rubbed his penis. Appellant was in the same bed and was fully aware that it was happening, but did not say anything. D.L. also related instances of her performing oral sex on her father, but maintained that appellant never knew of these incidents. She could not remember how many times this happened, but she knew that it occurred more than once and that these encounters usually happened at nighttime in a kitchen chair while appellant was asleep.

D.L. stated that most of the foregoing events occurred just after she had gotten out of kindergarten while her family was living on Days Road in Lafayette. As a result of the abnormal atmosphere in the home, D.L. did not believe that these events were wrong. On cross-examination, however, a small portion of D.L.'s testimony from her father's trial was read in which she stated that appellant told her it was wrong to do these things. She denied any memory of making that statement.

Appellant did not testify at trial. However, she gave two statements to law enforcement officials during the investigation. The State introduced these statements through the testimony of the Macon County Sheriff. In the first statement, given July 19, 1993, appellant admitted that she observed her husband and daughter lying on the bed and that D.L. rubbed his penis. She stated that this occurred about "one

4

month ago." She further stated that her husband told her that D.L. was "oversexed [and] that she is the hottest little girl he has ever seen." Appellant then told him not to have sex with D.L. because it would "kill her." In response, her husband said he had not penetrated D.L., but he had rubbed his penis through her vagina and that "she liked it." In her statement, appellant further said that D.L. enjoyed watching her and her husband have sex.

The following day, July 20, 1993, appellant gave a second statement that was tape recorded. In that statement, appellant admitted that she was present when the nude photos of D.L. were taken and that she may have made one of them. She contended that the photos were made about six months before the interview. Furthermore, appellant denied any knowledge of her husband and D.L. having oral sex. Appellant admitted, however, that she saw the penis-rubbing incident and she knew that her husband rubbed his penis through D.L.'s vagina. She stated that she told him that he did not need to do that. However, she did not really think much about it and it did not bother her. In her statement, appellant said that her husband often slept in D.L.'s bed at night. However, she claimed no knowledge of what may have occurred on those occasions, which were as often as once a week. Similarly, appellant professed no knowledge of what occurred when the three of them slept in the same bed together. According to appellant, she laid down and went to sleep without turning around to see what they were doing.

In her statement, appellant also confirmed that she and her husband walked around nude in front of the children, but that her husband did it more often. She stated that her husband often slept in her nightgowns. She further described an event where the children took a bath with her husband and he was shaving his legs.

When appellant was arrested, a television news reporter was present during the booking procedure and videotaped appellant answering his questions about the charges. The news reporter's tape was played for the jury during the trial. During that interview, appellant explained that she knew that these acts were occurring, but that

5

she never assisted in them. She admitted to observing "some things;" however, she felt that things would not get so serious and that she never understood who was encouraging the behavior, her husband or D.L. She related to the reporter that her husband had done many things of which she did not approve, but that she "just let it ride."

The indictment charged appellant with three counts of rape of a child and three counts of aggravated sexual battery. Each count of the indictment alleged appellant's responsibility for these crimes under a different section of the criminal responsibility statute. See Tenn. Code Ann. §39-11-402 (1991). Prior to charging the jury, the trial court ruled that counts five and six of the indictment, which charged criminal responsibility under subsection (3) of the statute, were only misdemeanor charges of child abuse. The jury instructions comported with that order. After deliberations, the jury returned guilty verdicts on all six counts.

## II. INDICTMENT

Appellant contends that the indictment was vague and ambiguous, thereby preventing her from preparing a defense. She also argues that the trial court erred by failing to order the State to file a bill of particulars, as she requested. Appellant contends that these errors warrant dismissal of the indictments. While we agree with appellant that the trial court erred in failing to order a bill of particulars, we do not find that the indictment must be dismissed for ambiguity.

### A. Sufficiency

The indictment in this case is somewhat unusual. The two principal offenses alleged were rape of a child and aggravated sexual battery. In alleging three counts of each of these offenses, the State indicted appellant under different theories of criminal responsibility. For example, count one of the indictment, charging rape of a child, reads:

> Judy C. Leath . . . unlawfully acted with the intent to promote or assist in the commission of an offense; to-wit: rape of a child, and further the said

6

Judy C. Leath did direct or aid Paul Leath in his unlawful sexual penetration of [D.L.], age 6, in violation of the statute.

Count one alleged appellant's culpability under subsection (2) of Tennessee Code Annotated section 39-11-402. The language of this count follows the exact statutory language. Similarly, count two alleged aggravated sexual battery of D.L. using the same language from subsection (2) of the criminal responsibility statute. Tenn. Code Ann. §39-11-402 (1991). Counts three and four alleged appellant's culpability for the two principal offenses following the language of subsection (1) of the statute: "acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in the conduct prohibited by the . . . offense." Id. Counts five and six then alleged appellant's culpability for child rape and aggravated sexual battery under the language of subsection (3) of the statute: "having a duty . . . voluntarily undertaken to prevent the commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense." Id. We do not find that this method of charging the offenses violated the appellant's constitutional rights.

Under Tennessee law, an indictment is required to meet three basic purposes:

(1) provide notice to the defendant of the precise charges against which he or she has to defend;

(2) notify the trial court of the charges against the defendant so the trial court can enter an appropriate judgment and sentence; and

(3) protect the defendant against double jeopardy.

State v. Trusty. 919 S.W.2d 305, 309 (Tenn. 1996); State v. Haynes, 720 S.W.2d 76, 82 (Tenn. Crim. App. 1986). The indictment here fulfilled all three requirements. It provided appellant notice of the charges against her. Although complex, the instrument provided appellant with a statement of her criminal responsibility for these offenses. The indictment placed the appellant on notice that she was charged with three counts of child rape and three counts of aggravated sexual battery committed

7

upon her minor daughter and the precise nature of her culpability as the State believed it occurred.

Furthermore, the indictment sufficiently notified the trial court of these charges permitting it to enter appropriate judgment and sentence. The indictment informed the trial court that the State was pursuing a theory of criminal responsibility, thus making it aware that if the jury returned guilty verdicts, appellant was deemed convicted of the principal offenses. Tenn. Code Ann. §39-11-401(b) (1991). It also protected appellant from double jeopardy. By its terms, the indictment alleged six different instances of misconduct during a particular time frame, between June 1, 1993, and July 19, 1993. An accused is protected from double jeopardy for the type of offenses charged during the entire time period covered in the indictment. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). Thus, the indictment fulfilled the necessary constitutional requirements and dismissal is not warranted.

## B. Bill of Particulars

A bill of particulars may be ordered to adequately identify the offense charged. Tenn. R. Crim. P. 7(c). The function of a bill of particulars is to provide a defendant with information about the details of the charge that are necessary in the preparation of his or her defense and to avoid prejudicial surprise at trial. State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984) (quoting 1 C. Wright, *Federal Practice and Procedure, Criminal*, §129 p. 434 (1982)). See also State v. Stephenson, 878 S.W.2d 530, 539 (Tenn. 1994). The defendant should be given enough information about the events charged so that he or she may diligently prepare for trial. Id. Where the indictment is not sufficiently detailed, a bill of particulars will serve this purpose. An abuse of discretion must be shown to demonstrate error in denying a bill of particulars. Stephenson, 878 S.W.2d at 539. When considered in conjunction with other errors committed in the record, we conclude that the trial court's denial of appellant's motion for a bill of particulars was an abuse of its discretion.

8

Appellant filed a motion for a bill of particulars shortly after the indictment was returned. Appellant's counsel strenuously argued the motion before the trial court and it was denied. A second motion was later filed and argued. In numerous appearances before the court, counsel stressed his need for such a document. He requested the State to enumerate the time and place of the offenses, the precise acts of the defendant in committing the offense, and any persons witnessing the offense. We do not find it necessary for the appellant to know the exact time and place of each offense[2] or the persons witnessing the offense in order to prepare her defense. However, we find that the appellant's efforts to adequately prepare a defense were hindered by her lack of knowledge of what specific acts constituted the different offenses enumerated in the indictment. Not only was she unaware of what factual circumstances constituted the rape and sexual battery counts, she was also not informed of the actions constituting her criminal responsibility. The trial court must make every effort to see that the prosecution supplies information critical to preparation of a defense in a bill of particulars, and the court failed to do so here. See State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). The trial court erred in denying appellant's motion for a bill of particulars.[3]

The sufficiency of an indictment is irrelevant in determining whether to order a bill of particulars. Hicks, 666 S.W.2d at 56 (quoting 1 C. Wright *Federal Practice and Procedure*, *Criminal*, §129 p. 434 (1982)). The sufficiency of an indictment does not militate against ordering a bill of particulars for more specific details about the charges. Id. Thus, although the indictment was legally sufficient to put the defendant

---

[2]The indictment alleged that the offenses occurred "between June 1, 1993 and July 19, 1993." This is a rather limited time frame and differs from the type of case in which no dates were specified over a period of one or more years and more particular information was necessary in a bill of particulars. See e.g. State v. Byrd, 820 S.W.2d 739, 741-42 (Tenn. 1991). Moreover, appellant's statements to police and the television reporter fully comported with the time frame of the indictment, acknowledging that appellant was aware of this information. Thus, there was no risk of unfair surprise at trial.

[3]This error is compounded by the fact that appellant's counsel could not interview the victim prior to trial. See IV below. Although appellant had D.L.'s testimony from her father's trial, this did little to enlighten the nature of appellant's culpability.

9

on notice of the charges against her, a bill of particulars was necessary in this case to permit the defendant to prepare an adequate defense and avoid prejudicial surprise at trial.

## C. Election of offenses

Our conclusion that the denial of the bill of particulars was error is influenced by another error committed at trial; namely, the State's failure to elect offenses. This error was not raised by the appellant in her brief, nor did she request election of offenses at trial. However, an appellate court may consider issues not presented for review if they rise to the level of "plain error." See Tenn. R. Crim. P. 52(b); Tenn. R. App. P. 13(b). The doctrine of plain error should only be invoked in the face of an egregious error which affects the substantial rights of the accused. State v. Adkisson, 899 S.W.2d 626, 639-40 (Tenn. Crim. App. 1994). A substantial right is a right "of fundamental proportions . . ., a right to the proof of every element of the offense, and is constitutional in nature." Id. at 639 (citations omitted). Election of offenses is necessary to ensure unanimity of the jury verdict, a fundamental right protected by our state constitution. State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). Recognition of this error is necessary to prevent manifest injustice and to do substantial justice. State v. Adkisson, 899 S.W.2d 626, 638-39 (Tenn. Crim. App. 1994); see also State v. Hoyt, 928 S.W.2d 935, 946 (Tenn. Crim. App. 1995) (finding that State's failure to elect offenses was plain error); State v. Phillip Franklin Moore, No. 01C01-9409-CC-00317, slip op. at 1 (Tenn. Crim. App., Nashville, Aug. 9, 1996) (finding that the State's failure to elect offenses constituted plain error). As an exercise of our discretion, we have chosen to address this issue. Tenn. R. Crim. P. 52(b); Tenn. R. App. P. 13(b).

Election of offenses is necessary to protect several important interests of a defendant. It enables a defendant to prepare and defend against the specific charges; it protects the defendant from double jeopardy; and election ensures

10

unanimity of the jury verdict. State v. Burlison, 501 S.W.2d 801, 804 (Tenn. 1973). While all of these interests are crucial, the true import of this doctrine is its protection of a defendant's constitutional right to jury unanimity. See Tidwell v. State, 922 S.W.2d 497, 501 (Tenn. 1996). Entitlement to jury unanimity encompasses not only a right that the jury be unanimous as to which offense constitutes the crime for which the defendant is convicted, but also a right to unanimity regarding the specific act or acts which constitute the offense. Brown, 823 S.W.2d at 582. To protect this right of the defendant, a trial court has a duty to require the State to elect the particular offenses upon which it relies for conviction and to instruct the jury so that the verdict of every juror will be united on one offense. Burlison, 501 S.W.2d at 804. See also Shelton, 851 S.W.2d at 136.

Often challenges to jury unanimity arise in the context of child sexual abuse cases where the evidence suggests that a defendant has committed many sexual crimes against the victim, but the proof lacks specific, identifying details. See e.g. Tidwell, 922 S.W.2d 497; Shelton, 851 S.W.2d 134; Burlison, 501 S.W.2d 801; State v. Hoyt, 928 S.W.2d 935 (Tenn. Crim. App. 1995). When the State presents proof on many offenses within an alleged time period, but neglects election, the jury is allowed to "reach into the brimming bag of offenses and pull out one for each count." Tidwell, 922 S.W.2d at 501. In such cases, the trial court must require the State to elect the particular offenses for which convictions are sought. Shelton, 851 S.W.2d at 137. When election does not occur, there is no assurance that the jury will deliberate over the particular charged offenses, thereby creating a risk that the jury will render a "patchwork verdict" based on different offenses in evidence. Id. (citing Brown, 823 S.W.2d at 583). In essence, the jury is permitted to select for itself the offenses on which it will convict, resulting in a "grab-bag theory of justice" where juror unanimity is questionable. See Shelton, 851 S.W.2d at 137; Tidwell, 922 S.W.2d at 501. This is contrary to contemporary notions of justice. See id. at 501-02. A conviction that is not unanimous as to the defendant's specific illegal action is no more justifiable than a

11

conviction by a jury that is not unanimous on a specific count. Brown, 823 S.W.2d at 583 (quoting United States v. Beros, 833 F.2d 455, 462 (3d Cir. 1987)).

In appellant's case, the only mention of unanimity in the trial court's charge was one sentence advising that "the verdict must be unanimous." The trial court failed to ensure that the jury would deliberate over the particular charged offense. Shelton, 851 S.W.2d at 137. When, as here, the State presents evidence of numerous offenses, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. Brown, 823 S.W.2d at 583. A skeletal instruction on unanimity ferments a strong possibility of a composite jury verdict in violation of an appellant's constitutional rights. State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995).

As recently as December 22, 1997, our supreme court, in a case involving multiple sexual offenses alleged to have been committed upon a young female, found it to be plain error requiring a new trial where the State failed to properly elect the offenses for which convictions were sought. State v. Walton, No. 02S01-9606-CC-0002 (Tenn. at Jackson, Dec. 22, 1997). Speaking for a unanimous court, Justice Birch said:

> In cases such as this one where the evidence suggests that the defendant has committed many sexual offenses against a victim, the trial court must require the State to elect the particular offenses for which convictions are sought in order to ensure that the jury verdict is unanimous. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). This requirement is "fundamental, immediately touching the constitutional rights of an accused . . . ." Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). As we stated in Shelton, "the purpose of election is to ensure that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask a conviction, then the court cannot be assured of a unanimous decision." Shelton, 851 S.W.2d at 138.

See slip op. at 5. As an inferior court, we are bound by the rulings of our supreme court. Therefore, a new trial is mandated for this appellant.

Moreover, the criminal responsibility theory pursued by the State magnifies this error. In charging under this theory, the State predicated appellant's liability upon

12

three different sections of the statute, each requiring proof of different elements of culpability. When considered in this light, this court is unable to conclude that the jury unanimously agreed on each count as to the factual proof and the requisite level of mental culpability required under the statute. The permutations that support valid convictions here are varied and several, and such potential for variation does not satisfy the constitutional requirement for jury unanimity. Brown, 823 S.W.2d at 583 (quoting Beros, 833 F.2d at 462).

### III. SUFFICIENCY OF THE EVIDENCE

Appellant also challenges the sufficiency of the convicting evidence presented at trial. She alleges that the proof did not support the requisite mental state for each instance of criminal responsibility as charged in the indictment. We are unable to make a determination on this issue.

When the State fails to elect offenses, it hinders appellate review of the sufficiency of the evidence. See Tidwell, 922 S.W.2d at 501; Shelton, 851 S.W.2d at 138; Brown, 823 S.W.2d at 584. Neither the trial court functioning as a thirteenth juror, nor this court on review, can be certain which evidence was matched by the jury to each count. Tidwell, 922 S.W.2d at 501. Perhaps it would have been possible in this case for a rational trier of fact to find the elements of at least one or more of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, this possibility alone does not tell us whether the jury was unanimous on what evidence justified the convictions. Brown, 823 S.W.2d at 584. Thus, we cannot discharge our function properly and we decline to address this issue.[4] For the same reason, we also decline to review the propriety of the trial court's overruling the appellant's motion for acquittal.

---

[4]On retrial, the State should be guided by the principles of criminal responsibility as stated by our supreme court in State v. Jubal Carson, No. 03-S-01-9606-00063 (Tenn. at Knoxville, August 4, 1997) (for publication). In Carson, the supreme court adopted the "natural and probable consequences rule" from the common law pertaining to aiders and abettors. Slip op. at 10. The court also stated that in order to sustain a conviction under subsection (2) of the criminal responsibility statute, the defendant "must knowingly, voluntarily, and with common intent unite with the principal offenders in the commission of the crime." Slip op. at 7 (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)).

## IV. ACCESS TO VICTIM

The appellant next argues that it was error for the trial court to refuse her counsel access to the victim in preparation for trial. The record reflects that counsel attempted to interview the victim, but was not permitted by the child's custodians to do so. He then petitioned the court for an order allowing him access to her. The court refused to order the victim to communicate with counsel against the foster parent's wishes.

All prospective trial witnesses have the discretion to talk or not to talk with counsel of either side. State v. Singleton, 853 S.W.2d 490, 493 (Tenn. 1993). This prevents a trial court from ordering a witness to communicate with counsel. However, it is necessary for opposing counsel to have "access" to the witness. Id. (quoting Gammon v. State, 506 S.W.2d 188, 190 (Tenn. Crim. App. 1974)). This does not ensure an actual interview, but permits counsel to request one and the witness to decide independently. Id. Here, the trial court properly declined to order the victim to communicate with appellant's counsel, as it did not have authority. To order such communication, however, the trial court protected appellant's right of "access" to the victim by advising the victim's foster parents that they had the discretion to permit an interview. The foster parents' decision to refuse to grant an interview was fully within their discretion and the trial court committed no error.

## V. ADMISSIBILITY OF PHOTOGRAPHS

Appellant also contests the admission of several photographs. During the Sheriff's testimony, the State introduced several pornographic photos depicting both appellant and the victim exposing intimate body parts in identical poses. These pictures were taken approximately six months prior to the time frame in the indictment and appellant argues that they are irrelevant. In the alternative, she argues the

probative value of the photos was substantially outweighed by the danger of unfair prejudice.  We find no error.

The admissibility of photographic evidence is within the sound discretion of the trial court.  State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978).  Admissibility, of course, hinges upon relevance and also a determination that the probative value of the photographs is not outweighed by the danger of unfair prejudice.  Id.; see also Tenn. R. Evid. 401, 403.  The photographs were relevant in proving the *mens rea* of the offenses because they demonstrate that appellant was aware, over a period of time, that sexual abuse and irregular activities were occurring in her home.  Appellant's knowledge of such activity and the atmosphere in the home was relevant to prove her culpability under the criminal responsibility statute.

We do not believe the probative value was outweighed by the risk of prejudice.  From the testimony, the jurors learned that the photos were taken outside the time specified in the indictment.  The trial court instructed the jury that the photographs were relevant for a limited purpose only and that it should consider them only in relation to the charged offenses and not as evidence of other crimes.  This instruction minimized the risk of prejudice and was relevant in considering admissibility of evidence under Rule 403.  Neil P. Cohen et al, *Tennessee Law of Evidence* §403.7 at 156 (3d. ed. 1995).  We find no abuse of discretion.[5]

Appellant also asserts that the pictures were not properly authenticated.  Authentication is achieved if there is evidence sufficient to demonstrate to the trier of fact that the matter in question is what its proponent claims.  Tenn. R. Evid. 901(a).  One permissible method of authentication is by a witness with knowledge.  Tenn. R. Evid. 901(b)(1).  The photographs here were properly authenticated.

In order to authenticate the photographs, it was necessary to demonstrate that they were actually of appellant and her daughter.  The Sheriff testified that he

---

[5]Had the appellant objected to the admissibility of the pictures because they were evidence of other crimes, i.e. child pornography, this would be a closer question.  Tenn. R. Evid. 404(b).

15

discovered the pictures during a search of the Leath home and found them in a drawer in the master bedroom. Appellant was questioned about the pictures during her statements and she admitted that the pictures were of her and her daughter and that she had taken at least one of them. This proof was sufficient to ensure the pictures were authentic. State v. Williams, 913 S.W.2d 462, 465 (Tenn. 1995).

## VI. ADMISSIBILITY OF VIDEOTAPED INTERVIEW

Appellant alleges that the trial court committed error by allowing the introduction of a videotaped interview conducted by a news reporter while she was in the booking room of the jail. She claims that the videotape was inadmissible due to irrelevancy and a lack of authentication. Additionally, she asserts that the news reporter was acting as an agent of the state in questioning her, thus subjecting her to custodial interrogation without the benefit of Miranda warnings. On this basis, she argues that the tape should have been suppressed. This issue is without merit.

First, the videotape was properly authenticated. At trial, the Sheriff, who was present during the taping of the interview and is depicted on the tape, served as a witness with personal knowledge of the tape's contents to provide the necessary foundation and authentication of the videotape. See Tenn. R. Evid. 901(b)(1); Williams, 913 S.W.2d at 465. Furthermore, the videotape was relevant. It included several admissions by the appellant concerning the occurrence of knowledge of sexual criminal conduct, as well as providing the time frame covered by the indictment.

Further, the record provides no reason to suppress the videotape. It is true that statements which are a product of custodial interrogation given without the proper warnings must be suppressed. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the type of interrogation prohibited by Miranda must be initiated by a law enforcement official. State v. Anderson, 937 S.W.2d 851, 853 (Tenn. 1996). The questioning in the videotape was performed by a television news

16

reporter, not a law enforcement official. We find no evidence to support appellant's claim that the news reporter was acting as an extension of the Macon County Sheriff's Department. Appellant made no showing that the reporter acted at the behest of the Sheriff or any other State agent. Therefore, the tape was properly admitted.

## VII. EXCULPATORY EVIDENCE

Appellant maintains that the trial court failed to order the State to provide her with exculpatory evidence. This assertion is incorrect. The trial record indicates that the trial court issued an order for the State to provide appellant with exculpatory evidence. Additionally, appellant contends that the State failed to provide certain exculpatory evidence. Specifically, appellant argues that the State possessed information that she had told someone in the community that she suspected her husband of abusing her daughter. She argues that this statement was exculpatory evidence and the State's failure to disclose it violated her right to a fair trial under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In order to substantiate a due process violation under Brady, an appellant must demonstrate: (1) the State suppressed information; (2) the information must have been favorable to the accused; and (3) the information must have been material.[6] State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995) (citations omitted); see also State v. Philpott, 882 S.W.2d 394, 402 (Tenn. Crim. App. 1994); State v. Marshall, 845 S.W.2d 228, 232 (Tenn. Crim. App. 1992).

Appellant asserts that the Sheriff initially learned of improper sexual activity in the Leath household from a man named John Kenney. Purportedly, appellant told Kenney that she believed her husband was "messing with" D.L. Apparently, the State's investigation followed the disclosure of appellant's comments to Mr. Kenney. Appellant claims the State never told her that it possessed that information, which, she says, is tantamount to suppression of exculpatory evidence. We fail to see how the information was exculpatory of appellant. If anything, it implicated the appellant by revealing her knowledge of these offenses, which was relevant in assessing her criminal responsibility. Furthermore, it is unusual that appellant would claim that the

---

[6]An additional requirement, that the defendant request the information, was also discussed by our supreme court. Edgin, 902 S.W.2d at 389. The record reflects that appellant did request such information. Moreover, the necessity for such a request has been obviated somewhat by the United States Supreme Court. Kyles v. Whitley, 514 U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (holding that the test for materiality applies irrespective of a request).

18

State suppressed information that she provided to Kenney. If appellant made the statement to Kenney, she obviously was aware of it. The prosecution has no duty to disclose evidence that the defendant already possesses. Marshall, 845 S.W.2d at 233 (citations omitted). Therefore, no Brady violation occurred in appellant's case.

## VIII. JURY INSTRUCTIONS

Appellant also maintains that the jury charge violated her constitutional right to due process of law. Appellant failed to lodge an objection to the jury charge at trial. Her counsel was given an opportunity to review the charge and made no objection on the record. Therefore, we must consider the issue waived. State v. Black, 924 S.W.2d 912, 916 (Tenn. Crim. App. 1995), perm. to app. denied (Tenn. 1996); see Tenn. R. App. P. 36(a). Furthermore, appellant's discussion of this issue in her brief is wholly inadequate. She has failed to cite specific portions of the charge and makes blanket assertions not supported by authority. We decline to review the issue. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988).

## IX. RECUSAL

Appellant contends that the trial judge erred in failing to recuse himself. She alleges that he was biased in favor of the State and failed to adequately rule on motions filed by the appellant. In addition, she argues that the trial was unfair, prejudicial, and biased. There is no merit to this issue.

The decision to grant a motion of recusal rests within the sound discretion of the trial judge. State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995) (citations omitted); Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991) (citations omitted). A clear abuse of this discretion must appear on the face of the record before we will interfere with the trial court's decision. Id. Recusal is proper if the judge's impartiality might reasonably be questioned, if he has personal bias or prejudice concerning a party, or if he has personal knowledge of disputed evidentiary facts. Tenn. S. Ct. R. 10, Code of Judicial Conduct, Canon 3(C)(1)(a); Smith, 906 S.W.2d at

11-12. We find nothing in the record to indicate that the trial judge had any personal knowledge about the disputed facts in appellant's case, that his impartiality was questionable, or that he exhibited any personal bias or prejudice. Furthermore, it is relevant that the trial judge specifically denied his bias on the record. See Omohundro v. State, 109 S.W.2d 1159, 1164 (Tenn. 1937) (holding that a trial judge's denial of such allegations under his official oath ends the inquiry). See also Caruthers, 814 S.W.2d at 67 n.11. The trial court did not commit error in denying this motion. Similarly, our review of the record does not demonstrate that the trial was unfair, prejudicial, or biased.

## X. SENTENCING

Finally, appellant argues that her sentence is improper. She asserts that the trial court failed to apply appropriate mitigating factors, improperly applied enhancement factors, and erroneously ordered consecutive sentences. To assist the trial court in the event the new trial results in a conviction, we will address this issue to the extent possible given the present state of the record on appeal.

When a defendant challenges his or her sentence, we must conduct a *de novo* review of the record. Tenn. Code Ann. §40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. Tenn. Code Ann. §40-35-401 Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The trial court sentenced appellant, a Range I offender, to an effective sentence of sixty (60) years in the Department of Correction. On the two counts of child rape, she received twenty (20) years each and on the two counts of aggravated

sexual battery, she received ten (10) years each. The sentences for these Class A and Class B felonies are at the midpoint of their appropriate ranges. See Tenn. Code Ann. §40-35-112 (1990). As reflected on the record, the trial court considered mitigating and enhancing factors. It found no evidence of mitigating factors, but applied three enhancement factors. The trial court held that appellant was a leader in the commission of the offenses, that she abused a position of private trust, and that the crimes were committed under circumstances where the potential for bodily injury to the victim was great. See Tenn. Code Ann. §40-35-114(2), (15), (16) (Supp. 1996). The trial court's order of consecutive sentences was supported by the sexual offender section of the statute. Tenn. Code Ann. §40-35-115(a)(5) (1990).

We find, as the trial court did, that no mitigating factors are applicable. Appellant argues that she played a minor role in the offenses and that she acted under the domination of her husband. See Tenn. Code Ann. §40-35-113(4), (12) (1990). There simply is no evidence in the record to support her position. With regard to the enhancement factors, there is no question that appellant abused a position of private trust. Tenn. Code Ann. §40-35-114(15) (Supp. 1996). Appellant is the victim's mother and entrusted with her care.

Unfortunately, we are unable to determine whether other enhancement factors would apply due to the nature of the convictions. For example, the trial court stated that the circumstances of the offense reflected that the potential for bodily injury was great where an adult male achieved penile penetration of a six-year-old child. While we agree with that reasoning, there is nothing in the record to reflect that the jury so found. As discussed, none of the verdicts indicate that the jury convicted appellant of her criminal responsibility for her husband's vaginal rape of a child. If the conviction reflected such factual findings, this factor would certainly be applicable. In addition, we do not find that the record supports a finding that appellant was a leader in the commission of the offenses. Finally, consecutive sentencing may be appropriate if appellant is again convicted of two or more sexual crimes and there is proof

21

supporting the circumstances outlined in this enumerated factor. <u>See</u> Tenn. Code Ann. §40-35-115(a)(5) (1990).

## XI. CONCLUSION

We find that the cumulative errors that occurred at the trial court below require reversal of the convictions and that appellant receive a new trial. From a thorough review of the record, we are unable to determine what factual allegations supported each count of the indictment and therefore supported the jury's verdicts. The lack of a bill of particulars and the State's failure to elect offenses deprived appellant of her constitutional right to a unanimous jury verdict, thus warranting reversal of her convictions. If the appellant could legally be convicted of these offenses based on evidence that she was a totally irresponsible mother who incredibly allowed atrocious acts to be perpetrated against her child, we would have no hesitation in affirming her convictions and her sentences. Nevertheless, the Constitution guarantees every citizen of our state, including Judy C. Leath, a fair trial. Although the members of this Court are shocked and sickened by the moral depravity reflected in this record, our function is to determine whether appellant violated the statutes under which she was convicted and whether she was afforded the constitutional safeguards to which she is entitled. <u>State v. VanArsdall</u>, 918 S.W.2d 626, 629 (Tenn. Crim. App. 1995). Under the circumstances of appellant's case, we cannot so conclude and a new trial is ordered.

_____
William M. Barker, Judge



_____
David H. Welles, Judge



_____
Jerry L. Smith, Judge