IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2017 Session

## STATE OF TENNESSEE v. BRIAN ROBERT LAWSON

**Appeal from the Criminal Court for Davidson County**
**No. 2016-A-59      Amanda McClendon, Judge**

_____

### No.  M2017-00238-CCA-R3-CD
_____

The State of Tennessee appeals the Davidson County Criminal Court's order dismissing the indictment, which charged the Defendant with domestic assault by causing bodily injury.  On appeal, the State contends that the trial court erred by dismissing the indictment.  We conclude that the trial court erred by dismissing the indictment.  The order of the trial court is reversed, the domestic assault charge is reinstated, and the case is remanded to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and P. Danielle Nellis, Assistant District Attorney General, for the appellant, State of Tennessee.

Joel W. Crim, Nashville, Tennessee, for the appellee, Brian Robert Lawson.

### OPINION

This case involves an August 2015 altercation between the Defendant, Crystal Cunningham, and DJ Summers.  At the time of the altercation, the Defendant and Ms. Cunningham had recently ended their romantic relationship. During the incident, the Defendant pushed Ms. Cunningham, but she was not injured.  Mr. Summers intervened, and a physical altercation between the men ensued.  At some point, Ms. Cunningham was struck in the face, resulting in an injured lip.  The Defendant was charged with domestic assault by causing bodily injury to Ms. Cunningham.  A preliminary hearing was subsequently held in general sessions court.

At the preliminary hearing, Crystal Cunningham testified that the Defendant was her former boyfriend, that their two-year relationship was intermittent, and that their relationship ended permanently four days before the August 27, 2015 incident. She said that although their relationship had ended, some of her belongings were at the Defendant's home. She said that on August 27, she visited DJ Summers and Chelsea Lindemyer's home and that while at their home, she spoke to the Defendant on the telephone. She said that she and the Defendant discussed her removing her belongings from the Defendant's home on August 30, that they began to argue, and that she ended the call. She said the Defendant showed up uninvited to Mr. Summers and Ms. Lindemyer's home. Ms. Cunningham said that the Defendant asked her why she was there instead of removing her belongings from his home, although they had previously agreed Ms. Cunningham would remove her belongings on August 30.

Ms. Cunningham testified that the Defendant was angry when he arrived at the home, that she was in the backyard, that she saw the Defendant's truck moving at a high rate of speed, and that the Defendant stood at the front door by the time she walked from the backyard. She said that the Defendant asked whose truck was parked in the driveway and that she told the Defendant the truck belonged to Cody West, who was her former boyfriend. She said that the Defendant's demeanor changed and that the Defendant attempted to go in the backyard. Ms. Cunningham said that Mr. West and Mr. Summers were close friends and that she did not know Mr. West would be at the home before she arrived.

Ms. Cunningham testified that upon hearing Mr. West was at the home, the Defendant developed a "blank stare" and "looked through" her as she told the Defendant to stop. She said she "put [her] hands up" to stop the Defendant from going into the backyard because Mr. Summers and Ms. Lindemyer's four-year-old son was at the home and because the Defendant had a firearm. Ms. Cunningham said that the Defendant, without speaking, removed his firearm from a holster and pushed her, that she fell but was not injured, and that Mr. Summers saw the Defendant's pushing her and intervened. Ms. Cunningham said that Mr. Summers told the Defendant to leave and that the Defendant ultimately returned the firearm to the holster.

Ms. Cunningham testified that Mr. Summers and the Defendant began to argue, that she simply wanted the Defendant to leave, and that she attempted to "break them up" by stepping between the Defendant and Mr. Summers. She said that she told the Defendant that "they" did not need to do "this," that the Defendant began removing his shirt, and that the Defendant and Mr. Summers began fighting. She said that when she attempted to break up the fight, she was struck and that her lip was injured. She said that she looked at the Defendant when she attempted to prevent the fight but that she did not know who struck her. She said that the Defendant left while Ms. Lindemyer was on the telephone with 9-1-1.

Ms. Cunningham testified that the Defendant continuously called her after he left, demanding that she retrieve her belongings. She said that the police arrived at Mr. Summers and Ms. Lindemyer's home, that she left with the officers to complete a police report, and that the Defendant returned to the home twenty minutes after she left. When asked how the incident made her feel, she said, "Not very good. I didn't want anybody to get hurt."

On cross-examination, Ms. Cunningham testified that the Defendant was injured during the altercation with Mr. Summers, that Mr. Summers had a hammer because the Defendant had a firearm, and that Mr. Summers discarded the hammer after realizing the Defendant had placed the firearm in his truck. She did not know whether the Defendant struck her in the mouth and agreed Mr. Summers could have hit her. She identified a photograph of the injuries Mr. Summers inflicted on the Defendant. She also identified a photograph of herself at work that was posted to Facebook the day after the incident. She stated, though, that she did not work the day after the incident and that the photograph was not taken the day after the incident. The photographs are not included in the appellate record. She did not take photographs of her injuries and said that the police advised her it was not a "good idea" because she was unsure whether the Defendant struck her.

Ms. Cunningham testified that before the physical altercation between Mr. Summers and the Defendant, Mr. Summers broke a taillight cover on the Defendant's truck with the hammer because the Defendant refused to leave the home. She said that Mr. Summers protected her during the incident and that the fight between Mr. Summers and the Defendant would not have occurred if the Defendant had not pushed her.

Chelsea Lindemyer testified that the Defendant was not invited to her home on August 27. She said that when the Defendant arrived, Ms. Cunningham walked to the front of the home, while she, Mr. Summers, their son, and Mr. West remained in the backyard. Ms. Lindemyer said that she saw the Defendant push Ms. Cunningham, that Mr. Summers walked toward the Defendant, and that Ms. Lindemyer saw the Defendant had "a gun on his side." Ms. Lindemyer said that Mr. Summers and Ms. Cunningham pushed the Defendant toward the front of the home and that Mr. Summers and the Defendant began to fight. She said that Ms. Cunningham stood up after being pushed to the ground by the Defendant.

On cross-examination, Ms. Lindemyer testified that she and Ms. Cunningham yelled at the Defendant to leave the home but that the Defendant did not listen. Ms. Lindemyer said she did not witness Mr. Summers break the taillight on the Defendant's truck because she was still in the backyard with her son. She said, though, that she went to the front yard to attempt to end the fight. She knew Mr. Summers had a hammer for protection during the altercation because the Defendant had a firearm. She noted her four-year-old son was present.

Ms. Lindemyer testified that after the Defendant pushed Ms. Cunningham, Ms. Cunningham "caught herself" as she fell to the ground. Ms. Lindemyer denied witnessing the Defendant attempt to hit Ms. Cunningham after pushing her.

The general sessions court judge determined that the domestic assault by offensive contact statute required proof that the Defendant intentionally or knowingly caused physical contact with Ms. Cunningham and that a reasonable person would regard the contact as extremely offensive or provocative. The court found that Ms. Cunningham was unsure who struck her during the struggle between the Defendant and Mr. Summers. The court determined, though, that Ms. Cunningham's testimony showed the Defendant pushed her. The court bound the Defendant over to the grand jury for the charge of domestic assault by offensive contact, not by causing bodily injury.

After the preliminary hearing, the grand jury returned a single-count indictment charging the Defendant with domestic assault by causing bodily injury. The Defendant filed a motion to dismiss the indictment based upon the preliminary hearing testimony and the general sessions judge's determination that the evidence supported a charge for domestic assault by offensive contact, not by causing bodily injury. The motion stated that dismissal of the indictment was necessary to protect the Defendant's due process rights, to deter prosecutorial misconduct, and to protect judicial integrity. The State responded that the general sessions judge's findings and determinations were not binding on the State or the grand jury.

At the motion hearing, defense counsel told the trial court that, based upon the proof at the preliminary hearing, the parties did not dispute the facts of the case. Counsel noted that the prosecutor at the preliminary hearing had argued that the Defendant was not invited to Mr. Summers' home, that the Defendant was aggravated, and that the Defendant pushed Ms. Cunningham. Counsel argued that the general sessions judge credited the State's theory of the case based upon offensive contact due to the Defendant's pushing Ms. Cunningham. Counsel stated that the State, nonetheless, obtained an indictment for domestic assault based upon bodily injury. Counsel said that although the State had exclusive control over the grand jury, the State's circumventing the general sessions judge's ruling was inherently unfair and tantamount to prosecutorial misconduct. He argued that the State's actions violated due process because the State conceded at the preliminary hearing that the case was about the push, not the injury to the victim's lip. Counsel asserted that the proper remedy was a dismissal of the indictment to deter prosecutorial misconduct and to preserve judicial integrity and general fairness.

The prosecutor responded that Tennessee Criminal Procedure Rule 5.1 permitted the State to present its case to the grand jury in the absence of a probable cause finding at a

-4-

preliminary hearing. She argued that although the general sessions judge found that the proper charge for the Defendant's pushing Ms. Cunningham was domestic assault by offensive contact, the State was within its rights to present evidence and to request an indictment from the grand jury for domestic assault by causing bodily injury. The prosecutor stated that although this case was about the Defendant's pushing Ms. Cunningham, the State believed this case involved a push resulting in injury to her and that any deficiency in the proof would be established at a trial. The prosecutor stated that the district attorney's office was not bound by the general sessions court's determinations relative to presenting cases to a grand jury. She argued that the grand jury believed the evidence supported a charge for domestic assault by causing bodily injury.

The trial court granted the Defendant's motion to dismiss the indictment. The court determined that the preliminary hearing testimony showed that relative to Ms. Cunningham's lip injury, she did not know who struck her. The court found that relative to the Defendant's pushing Ms. Cunningham, she was not injured and did not fall on the ground. The court determined that the general sessions judge intended the domestic assault charge to be bound over to the grand jury on the basis of offensive contact, which was a lesser included offense of the indicted offense. The court determined that the Defendant was prejudiced by the State's action because the Defendant would have been indicted for a Class B misdemeanor if the State had presented the case to the grand jury as directed by the general sessions judge. The court determined that the State's action violated principles of due process and dismissed the indictment. This appeal followed.

The State argues that the trial court erred by dismissing the indictment and argues that an indictment in variance or disagreement with a general sessions judge's determinations after a preliminary hearing does not render the indictment void. The Defendant responds that the trial court properly dismissed the indictment because the State engaged in prosecutorial misconduct and violated his due process rights.

"Any defendant arrested or served with a criminal summons prior to indictment or presentment for a misdemeanor or felony, except small offenses, is entitled to a preliminary hearing." Tenn. R. Crim. P. 5(e)(1). Tennessee Criminal Procedure Rule 5.1 governs preliminary hearings and states the following:

> (b) WHEN PROBABLE CAUSE FOUND. – When the magistrate at a preliminary examination determines from the evidence that an offense has been committed and there is probable cause to believe that the defendant committed it, the magistrate shall bind the defendant over to the grand jury and either release the defendant pursuant to the applicable law or commit the defendant to jail by a written order.

(c) WHEN PROBABLE CAUSE NOT FOUND. – When the magistrate determines from the evidence that there is not sufficient proof to establish that an offense has been committed or probable cause that the defendant committed it, the magistrate shall discharge the defendant. The discharge of the defendant does not preclude the state from instituting a subsequent prosecution for the same offense. . . .

In *State v. D'Anna*, 506 S.W.2d 200, 203 (Tenn. Crim. App. 1973), this court explained that

> the authority and power of a Grand Jury to consider a case and return a presentment or an indictment upon finding probable cause is in no way interfered with or prevented by the fact that a committing magistrate fails to find probable cause and discharges the accused in a preliminary hearing. . . . It could not be otherwise without seriously impairing this vital part of the Grand Jury's function. If the Grand Jury were precluded from investigating an alleged offense previously dismissed upon a preliminary hearing by a committing magistrate because he found no probable cause, such action by the magistrate would amount to acquittal of the accused. Of course, this cannot be.

Likewise, the dismissal of a charge at a preliminary hearing does not prohibit the State from obtaining an indictment at a subsequent date, and this court has concluded that the "issuance of the indictment by the grand jury . . . mark[s] the beginning of a new criminal proceeding against the appellant[.]" *State v. Thurman Randolph*, No. W2006-00261-CCA-R9-CD, 2006 WL 2993459, at *5 (Tenn. Crim. App. Oct. 20, 2006), *perm. app. denied* (Tenn. Mar. 19, 2007); *see Waugh v. State*, 564 S.W.2d 654, 660 (Tenn. 1978); *Danny E. Rogers v. Carlton*, No. E2011-00686-CCA-R3-HC, 2011 WL 4452207 (Tenn. Crim. App. Sept. 27, 2011), *perm. app. denied* (Tenn. Dec. 14, 2011).

Although the general sessions court found that probable cause existed to show the Defendant committed domestic assault by offensive contact by pushing Ms. Cunningham, the State was not prohibited from presenting its case to the grand jury that the Defendant committed a domestic assault by causing bodily injury. Although the Defendant successfully argued in the trial court that the State violated principles of due process by disregarding the general sessions court's determinations, the State acted within its authority and discretion in seeking and obtaining an indictment against the Defendant for domestic assault by causing bodily injury. Because the State properly sought and obtained the indictment, no prosecutorial misconduct occurred, and we conclude that the Defendant's due process rights were not violated. Therefore, we reverse the trial court's order dismissing the

indictment, reinstate the charge against the Defendant, and remand the case to the trial court for further proceedings.

In consideration of the foregoing and the record as a whole, the order of the trial court is reversed, the charge is reinstated, and the case is remanded to the trial court for further proceedings.

_____
ROBERT H. MONTGOMERY, JR., JUDGE